BEACON CONSTRUCTION COMPANY, INC., Plaintiff-Appellee,

v.

MATCO ELECTRIC COMPANY, INC., d/b/a Dwyer Electric Co., Inc., Defendant-Appellant.

No. 910, Docket 75–7032.

United States Court of Appeals, Second Circuit.

Argued May 15, 1975.

Decided Aug. 13, 1975.

**394**

Rodney A. Richards, Endicott, N. Y. (Becker, Card, Levy & Richards, Endicott, N. Y., on the brief), for defendant-appellant.

Robert J. Sherer, Boston, Mass. (John W. Gahan, III, Roche, Carens & DeGiacomo, Boston, Mass., Howard L. Meyer, McGrath, Meyer, Lieberman & Lipp, Buffalo, N. Y., on the brief), for plaintiff-appellee.

Before SMITH, Senior Circuit Judge, OAKES, Circuit Judge, and JAMESON, Senior District Judge.*

JAMESON, District Judge:

This is an appeal from a summary judgment in favor of plaintiff-appellee Beacon Construction Company, Inc. (Beacon) declaring null and void a notice of lien filed by defendant-appellant, Matco Electric Company, Inc. (Matco) and a surety bond given by Beacon to dissolve the lien, and awarding Beacon $3,516.00, the premium paid for the bond.

*Senior District Judge of the District of Montana, sitting by designation.

*Background*

Matco, a New York corporation, entered into a subcontract with Beacon, a Massachusetts corporation, to furnish and install an electrical system for a housing project Beacon was constructing in Rochester, New York pursuant to a general contract with the owner. Under the subcontract Matco expressly waived its right to file a mechanic's lien under New York law, paragraph 14 providing:

> "The Subcontractor hereby agrees that no mechanic's or other lien . . shall be filed or maintained by it against the said building and improvements and real estate appurtenant thereto, or any part thereof, for or on account of any work or labor done or materials furnished under this Subcontract . . . in or about the erection and construction of said buildings and improvements and that the filing of any lien . . . shall be grounds for termination of this Subcontract under the provisions of Paragraph 9 above. The Subcontractor hereby formally and irrevocably releases and waives any and every mechanic's, materialman's and any and every other lien, . . . that it has or may at any time be entitled to have against the aforementioned buildings, improvements and real estate, together with its right to file any and every such lien. . . . The subcontractor hereby irrevocably constitutes the Contractor its agent to discharge any liens . . . which may be filed by or on behalf of the Subcontractor against the property."

Despite this contractual provision, Matco filed a notice of mechanic's lien in the office of the county clerk on August 29, 1974 in the amount of $293,001.52. The filing of the lien placed an encumbrance on the property and had the effect of impeding or preventing the release of funds by the construction lender.[1]

1. From affidavit of a vice-president of Beacon, which was not contested.

On September 11, 1974, this action was filed pursuant to 28 U.S.C. § 1332, in which Beacon sought a judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring mechanic's lien null and void.[2] On October 3, 1974, Matco filed an action against Beacon in the Supreme Court, State of New York, to impress a lien pursuant to Article 3A, McKinney's Consol.Laws, c. 33, Lien Law, State of New York.[3] On the same date a surety bond in the amount of $351,601.82 was filed, and the mechanic's lien was thereby discharged.[4]

On October 23, 1974 Matco filed a motion to dismiss for failure to state a claim for which relief can be granted; or, in the alternative, for summary judgment or security for costs. On October 29, 1974 Beacon filed an amended complaint, seeking as additional relief a declaration that the bond was void and an award for the amount of the bond premium. On the same date Beacon filed a motion for summary judgment.

In granting Beacon's motion the district court held that "the defendant breached its contract with the plaintiff, when, on August 29, 1974 it caused to be filed a notice of lien"; that the lien was "null and void", the bond was void and plaintiff was entitled to recover the premium it had paid for the bond.

Matco contends on appeal that (1) the amended complaint does not state a claim for which relief can be granted pursuant to the New York Lien Law; (2) the federal courts lack jurisdiction because the amount in controversy does not exceed $10,000; and (3) Beacon was not entitled to recover the bond premium because other alternatives were available which would not have required the payment of a bond premium.

**2.** Matco on August 30, 1974 mailed to Beacon a demand for a verified statement pursuant to § 76 of the New York Lien Law. Beacon sought also to have this demand vacated.

**3.** From affidavit of counsel for Matco in support of its motion to dismiss. We find no other reference to this state court action in the record or briefs of counsel.

**4.** The attorneys for the respective parties entered into a stipulation approving the bond

## I. Does Amended Complaint State a Claim for Relief?

### A. New York Lien Law

Under New York Lien Law § 3 a subcontractor who performs labor and furnishes material for the improvement of real property has a lien for the value or agreed price of the labor and material. Notice of the lien must be filed in the clerk's office of the county where the property is situated. § 10. Upon the filing of notice the lien attaches and becomes effective. *Manton v. Brooklyn, etc., Realty Co.,* 217 N.Y. 284, 111 N.E. 819 (1916). The notice must be served upon the owner of the property to be fully enforceable against him. § 11. Section 19 relating to "Discharge of Lien for private improvement" provides in § 19(4) that an owner or contractor may have a lien discharged by filing with the county clerk a surety bond, approved by the court or a judge or a justice thereof.[5]

A subcontractor may forego or waive his right to a mechanic's lien. Under Section 34 of the New York Lien Law, however, he may not do so "except by an express agreement in writing specifically to that effect, signed by him or his agent". It is undisputed that the waiver executed by Matco complied with this statutory provision.

Matco contends, however, that notwithstanding this waiver, once the lien was filed, Beacon's exclusive remedy for attacking the lien was to serve a notice requiring the lienor to commence an action to foreclose the lien, pursuant to

and agreeing that an order be entered discharging the lien. The order was entered in the appropriate state court.

**5.** This permits a prompt removal of the encumbrance and continuation of construction and financing. However, it should be noted that a lien which is discharged by bond is not vacated. The underlying lien remains as does the obligation of the property owner.

New York Lien Law § 59.[6] Beacon argues that the waiver provision, authorized by Section 34, is an independently enforceable covenant, that the district court was correct in holding that Matco had breached its contract when the lien notice was filed, and that 28 U.S.C. § 2201 provides an appropriate remedy.

■ It is well settled that an express waiver in a contract signed by a subcontractor in compliance with Section 34 of the New York Lien Law is binding and enforceable. In *Arr-Em Plastering Corp. v. 515 East 85th Street Corp.*, 25 A.D.2d 59, 266 N.Y.S.2d 944, 946 (1966) the Supreme Court of New York, Appellate Division, First Department, held that such a waiver extinguishes the right to file a notice of lien, and the relinquishment of the right to file a lien "cannot be recalled or expunged". The court held further that the subcontractor's waiver was "inconsistent with and excludes the statutory basis for a mechanic's lien", and "[w]hen the lien has been once waived it cannot afterward be revived in the absence of an express agreement to that effect with the owner . . . ." (citing 57 C.J.S. Mechanics' Liens § 222, pp. 792–793). In that case a plastering corporation sought foreclosure of its mechanic's lien, and the owner of the property had moved for summary judgment dismissing the cross-complaint of the carpentry subcontractor. Reversing the lower court, it was held that the motion for summary judgment dismissing the cross-complaint of the subcontractor should have been granted. The

court did not consider the procedural question here presented, but it is clear from the court's decision that if this were an action to foreclose the lien or proceedings under Section 59 of the New York Lien Law, summary judgment would be proper.

Although it is apparent that Beacon should prevail on the underlying merits of this litigation, Matco contends that the federal courts are powerless to grant declaratory relief and that, "The only way in which the validity of the lien can be determined is in an action to foreclose the lien, or upon the failure of the lienor to commence such an action after notice given pursuant to § 59". Matco bases its argument on the New York cases which have interpreted New York Lien Law §§ 19 and 59, which prescribe procedures for determining the validity of mechanic's liens. These cases are, at first glance, very persuasive. In *Application of Jos. Blitz, Inc.*, 36 Misc.2d 1028, 234 N.Y.S.2d 671, 672–674 (1962), a case involving the validity of a mechanic's lien filed despite a waiver, the court articulated the general approach taken by the New York courts. It recognized that prior New York cases had held that (1) where a subcontractor files a lien in violation of a waiver, the lien may not be summarily discharged by motion, but the only remedy of the owner or contractor is to proceed under section 59; and (2) "The courts have no inherent power to cancel or discharge mechanic's liens on grounds other than those specified in the Lien Law."[7]

6. § 59 provides:
"A mechanic's lien notice of which has been filed on real property or a bond given to discharge the same may be vacated and cancelled or a deposit made to discharge a lien pursuant to section twenty may be returned, by an order of a court of record. Before such order shall be granted, a notice shall be served upon the lienor, . . . . Such notice shall require the lienor to commence an action to enforce the lien, within a time specified in the notice, not less than thirty days from the time of service, or show cause at a special term of a court of record, or at a county court, in a county in which the property is situated, at a time and place

specified therein, why the notice of lien filed or the bond given should not be vacated and cancelled, or the deposit returned, as the case may be. Proof of such service and that the lienor has not commenced the action to foreclose such lien, as directed in the notice, shall be made by affidavit, at the time of applying for such order."

7. In *Blitz*, a contractor sought an order summarily discharging a mechanic's lien filed by a subcontractor. The court noted that subdivision 6 of section 19 provided for a motion to discharge notice of a lien "invalid on its face". It held that this procedure is not available under subdivision 4, absent a showing that the

Did these decisions of the New York courts preclude the district court from exercising its discretion to grant declaratory relief? An answer to this question requires an analysis of the purpose and effect of the Declaratory Judgment Act.

## B. *Declaratory Judgment Act*

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in a "case of actual controversy within its jurisdiction" a court of the United States may "declare the rights and other legal relations" of an interested party "whether or not further relief is or could be sought". Rule 57, F.R.Civ.P., expressly provides that the ". . . existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate".

The purpose of the Act and its use as an additional remedy were explained by Judge Parker in the leading case of *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4 Cir. 1937) decided soon after the enactment of the Declaratory Judgment Act:

> "The statute providing for declaratory judgments meets a real need and should be liberally construed to accomplish the purpose intended, i. e. to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." [8]

■ The Act "confers a discretion on the courts" to grant or deny declaratory relief "rather than an absolute right upon the litigant". *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1940).[9]

■ While a district judge has discretion in determining whether to grant declaratory relief and is not precluded from granting relief by the existence of other remedies, his discretion is not unlimited. *Larson v. General Motors Corp.*, 134 F.2d 450, 453 (2 Cir. 1943). Moreover, in determining the propriety of entertaining a declaratory judgment action, "the appellate court should exercise its own judgment and may substitute its own judgment for that of the lower court". *Fay v. Fitzgerald*, 478 F.2d 181, 183 (2 Cir. 1973).

■ In diversity actions an important consideration in granting declaratory relief is its effect on federal-state relationships. As the Supreme Court said in *Great Lakes Dock Cc. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943), "It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction with the domestic policies of the states." [10] In view of the New York cases construing the New York Lien Law, a close and difficult question is presented in determining whether the district court properly exer-

---

lien is invalid on its face. Other cases in accord include *J. B. Cieri Const. Co., Inc. v. Gramercy Const. Corp.*, 13 A.D.2d 901, 215 N.Y.S.2d 994 (1961), and *Milbank-Frawley Housing Development Co. v. Marshall Const. Co., Inc.*, 71 Misc.2d 42, 335 N.Y.S.2d 598 (1962).

**8.** *See also Broadview Chemical Corporation v. Loctite Corporation*, 474 F.2d 1391, 1393 (2 Cir. 1973).

**9.** Quoted in *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

**10.** Most of the cases where relief was denied were concerned with interference by the federal courts in construing state tax laws, intervening in pending state legislation determining the constitutionality of state laws, and similar situations involving the domestic policies of states. *See* Moore's Federal Practice, §§ 57.-08[7] and 57.18 (1974).

cised its discretion in granting declaratory relief.

Counsel have not cited, nor have we found, a case precisely in point. It was held in *Allstate Insurance Co. v. Charneski*, 286 F.2d 238, 244 (7 Cir. 1960) that the district court should have dismissed a complaint by an insurance company seeking declaratory relief with respect to insurance coverage since the Supreme Court of Wisconsin had held that an insurance company may not bring a separate declaratory judgment action under the Wisconsin Uniform Declaratory Judgment Act as being in contravention of the legislative policy declared in its direct action statute.[11] The court held that the Wisconsin rule represented the substantive policy of the state and concluded that the federal court could not "assume jurisdiction in contravention of the declared state policy".

*Charneski* is distinguishable in that here there is no declared state policy prohibiting declaratory relief. Moreover, the decision in *Charneski* has been criticized by some commentators and textwriters. In particular, Wright & Miller, Federal Practice and Procedure, Civil § 2756 (1973) says in part: "This decision was arguable when it was made and its authority has been further eroded by the later decision in *Hanna v. Plumer*".[12] *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) involved the question of service of process under Rule 4(d)(1), F.R.Civ.P., in a diversity action. The Court considered at some length the effect of *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), noting that consideration must be given to the "twin aims of the *Erie* rule:

discouragement of forum-shopping and avoidance of inequitable administration of the law".

As noted in *Braden v. 30th Judicial Circuit Court of Commonwealth of Kentucky*, 454 F.2d 145, 147 n. 1 (6 Cir. 1972), rev'd on other grounds, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), it is clear that under Rule 57 "a court has *power* to grant declaratory relief when another adequate remedy is available, although it may, in the exercise of its discretion, decline to do so. 'The test is whether or not the other remedy is more effective or efficient, and hence whether the declaratory action would serve a useful purpose.' 6A J. Moore, Federal Practice § 57.08[3], at 3031–32." The court suggested further that a showing that a special statutory proceeding is inadequate to protect a plaintiff's rights or that declaratory relief would afford the plaintiff broader and more efficient protection might be sufficient to justify a court in exercising its discretion to grant declaratory relief.

■ At least in the absence of an express state policy prohibiting the use of a declaratory judgment action, in our opinion no hard and fast rule can be made for determining the propriety of granting declaratory relief in diversity cases. Rather the court must balance the interests of federal-state comity and the rights and needs of the parties, giving consideration to the various factors and legal principles enumerated above.

■ With these criteria in mind, we conclude that the district court was justified in exercising its discretion in favor of granting declaratory relief. We

---

11. The background for the Wisconsin rule was aptly summarized in Wright & Miller, Federal Practice and Procedure, Civil § 2756 (1973):

"Wisconsin is one of the few states in which a direct action is allowed against the liability insurer of a tortfeasor. Because of that Wisconsin, though allowing declaratory judgments generally, will not allow an insurer to seek a declaratory judgment of noncoverage in its state courts, reasoning that this would settle only one issue between the insurer and the injured person while all issues can be resolved in a single action by the injured person against the insurer."

12. While of the opinion that the Wisconsin rule should not have been controlling under *Erie* and *Hanna*, Wright & Miller, Civil § 2756, recognizes that "the fact that the right of action is state created and that the state would not allow a declaratory judgment under the circumstances are appropriate factors for the court to consider in exercising its discretion whether to hear the declaratory action".

note first that there was no state court action pending when the complaint was filed;[13] nor did the district court act in the face of a specific statute or state court ruling clearly denying the applicability of declaratory relief. Second, the parties agree that Matco's right to obtain a lien under the New York Lien Law was modified by the contract, which specifically provided that Matco waived its right to file a notice of lien. This was a binding and enforceable agreement under New York Lien Law § 34. A denial of declaratory relief would cause an inequitable administration of justice since denial would result in unnecessary delay and distortion of New York law rather than its proper application. Third, there is no indication that the plaintiff was engaged in "forum-shopping". The declaratory judgment is designed to provide prompt relief in cases where the more traditional procedures are cumbersome or would result in delay.

We hold that declaratory relief is appropriate since the contractual rights of the parties, which are the basis of the litigation, are so apparent[14] and there is no substantial challenge to appellee's claim under those rights. Appellant attacks only the procedure appellee followed. To hold that the district court did not have discretion to grant declaratory relief would violate the spirit of the Declaratory Judgment Act, Rule 57, and Rule 1, F.R.Civ.P., which provides that the rules of procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action".

## II. *Jurisdictional Amount*

Diversity is conceded, but appellant contends that the amount in controversy is the bond premium, i. e. $3,516.00 which does not "exceed the sum of $10,-000", as required by 28 U.S.C. § 1332. We find no merit in this contention. In its original complaint appellee sought a determination that a lien in the sum of $293,001.52 was void. By amendment appellee sought a further determination that a bond in the sum of $351,601.82, on which it was the principal obligor, was void.

We agree with appellee that the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation. *Smith v. Adams*, 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895 (1889). In a declaratory judgment action involving the validity of a contract, a situation somewhat analogous to this case, it was held that the entire value of the contract determined the amount in controversy rather than instalments under the contract or possible damages. *Davis v. American Foundry Equipment Co.*, 94 F.2d 441, 443 (7 Cir. 1938). Similarly it has been held that the entire value of an insurance policy determines the jurisdictional amount rather than the premium due or paid under the insurance contract. *New York Life Ins. Co. v. Swift*, 38 F.2d 175, 176 (5 Cir. 1940).

The value of the rights being adjudicated, i. e. the potential liability of appellee under the lien notice and bond, here determines the amount in controversy. That amount is greater than $10,000.

## III. *Recovery of Bond Premium*

Under the Declaratory Judgment Act, "Further necessary or proper

---

13. It is recognized that a court should not exercise diversity jurisdiction over a declaratory judgment action raising issues of state law when the same issues are being presented contemporaneously in state court. *Fay v. Fitzgerald, supra*, 478 F.2d at 182.

14. It seems clear that appellee would ultimately prevail under either of the alternative remedies proposed by appellant, i. e. if it were to proceed either under New York Lien Law § 59 or under paragraph 14 of the contract whereby Matco constituted Beacon its agent to discharge liens.

relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. It is well settled that "further relief" may include an award for damages. *Security Insurance Company of New Haven v. White*, 236 F.2d 215, 220 (10 Cir. 1956); *Hudson v. Hardy*, 137 U.S.App.D.C. 366, 424 F.2d 854, 855 (1970). In deciding whether to award damages or require the parties to engage in further litigation the determinative factor is which solution will result in the most expeditious and just conclusion of the controversy. *Maryland Cas. Co. v. Boyle Const. Co.*, 123 F.2d 558, 565 (4 Cir. 1941).

Appellant does not question these legal principles, but contends that Beacon was not "forced" to file the bond and had two available alternatives. The first alternative suggested was serving a notice pursuant to New York Lien Law § 59; and the second was to exercise its right under Paragraph 14 of the contract in which Matco constituted Beacon its agent to discharge any liens which might be filed by Matco.[15]

■ We conclude that Beacon was not required to follow either of the suggested alternatives. Matco had breached its contract in filing the lien notice. The bond effected a prompt discharge of the lien and permitted construction and financing to proceed without unnecessary delay. In this respect purchasing the bond was preferable to either of the suggested alternatives and was a reasonable

attempt to mitigate damages. The cost of obtaining the bond was an expense Beacon would not have incurred in the absence of Matco's breach.[16] The district court did not err in awarding Beacon damages in the amount of the bond premium.[17]

Affirmed.

---

15. In making this suggestion Matco in effect relies upon the same paragraph of the contract which provides the basis for this action.

16. Matco could have avoided any liability for the expense of the bond by consenting to a release of the lien after being served with Beacon's complaint.

17. Under § 39 of the New York Lien Law an owner or contractor is entitled to recover damages, including the amount of the premium for any bond given, where a lien has been declared void for "willful exaggeration". We see no reason why the contractor may not similarly recover the bond premium where the lien is filed in violation of an express contractual obligation of waiver.