**QUALITY KING DISTRIBUTORS, INC., Plaintiff,**

v.

**KMS RESEARCH, INC., Defendant.**

**No. CV 96–4774 (ADS).**

United States District Court,
E.D. New York.

Nov. 16, 1996.

Edwards & Angell, New York City (Alfred R. Paliani, Robert J. Brener, of counsel), New York City, for Plaintiff.

Latorraca and Goettsch by Raymond H. Goettsch, Long Beach, CA, Nagel Rice & Bravman, New York City, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This declaratory judgment action arises from the claims of the plaintiff, Quality King Distributors, Inc. ("Quality King" or the "plaintiff"), that the defendant, KMS Research, Inc. ("KMS" or the "defendant"), is posturing itself to commence a lawsuit for intentional interference with the defendants' contractual relationships with unspecified third parties. The plaintiff seeks a judgment declaring that its business activities are lawful and not in violation of any common law tort theories. KMS moves to dismiss the

Complaint, or in the alternative to stay this litigation, pursuant to 28 U.S.C. § 2201 governing declaratory judgment actions, based on an ongoing related lawsuit in California. The plaintiff opposes the defendant's motion arguing that this Court is an appropriate forum in which to litigate its claim.

## I. *Background*

The following facts are taken from the Complaint. Quality King is a New York corporation with its principal place of business in Suffolk County. The plaintiff is a wholesale distributor of consumer goods of, among other things, pharmaceuticals and health and beauty aids. Quality King pleads upon information and belief, that KMS is a California corporation with its principal place of business in Redding, California. The defendant is a manufacturer and distributor of professional hair care products including shampoos, conditioners and hair sprays, a portion of which it sells in the state of New York.

As part of its operation, Quality King purchases hair care products, including those manufactured by KMS, from certain unspecified "reputable supply sources" which it then "resells ... to reputable customers including large well-known retail chains." According to the Complaint, KMS prefers to sell its products through the "limited salon market" in order to maintain higher prices.

On August 22, 1996, as the result of Quality King's practice of selling KMS products at lower prices, KMS sent a "demand letter" to Quality King claiming that the plaintiff " 'has diverted KMS products from the authorized channels of distribution and sold those KMS products' in unauthorized retail outlets." The demand letter further advises that KMS "prohibits its authorized distributors from reselling to anyone other than 'hair salons, barber shops, beuauty [sic] schools and barber schools for resale' " and quotes from a form agreement which the defendant has entered into with its authorized distributors. According to the Complaint however, Quality King is not a party to any such agreement, and as a result, is not bound by its terms. Notwithstanding the absence of a contractual relationship, the letter accuses the plaintiff of

"interfering with KMS' contractual rights with its distributors and salon customers by selling KMS products" and demands that Quality King " 'cease and desist' " its purchase and resale of KMS products on or before September 13, 1996. The demand letter further seeks a written response agreeing to these terms.

As a result of the foregoing, the plaintiff alleges that it is in the position of "continuing its lawful business of purchasing and selling KMS [products] under the cloud and threat of a lawsuit from KMS, notwithstanding that Quality King's continued purchase and sale of such products is lawful and not restricted either by contract or at common law." According to the plaintiff, the demand letter was sent to put Quality King on notice of the defendant's distribution policy so that KMS can maintain a cause of action for intentional interference with contract, and prohibit the plaintiff from further distribution of its products.

Quality King filed its Complaint in New York Supreme Court, Suffolk County on August 29, 1996. *Quality King Distributors, Inc. v. KMS Research, Inc.*, Index No. 96–22135 (Sup.Ct. Suffolk Cty., August 28, 1996). The case was then removed by the defendant pursuant to this Court's diversity jurisdiction. The notice of removal was filed on September 27, 1996. The Complaint contains a single cause of action for a judgment:

declaring that Quality King is entitled to continue to purchase and sell KMS products, notwithstanding that KMS has notified Quality King that it has a corporate policy that restricts its authorized distributors from selling to anyone other than hair salons, barber shops, beauty schools and barber schools for resale and that some of such salons may have arrangements with their distributors restricting resale only to salon customers for personal use.

Also on September 27, 1996, the defendant filed a related action in the California Superior Court captioned *KMS Research, Inc. v. Quality King Distributors, Inc.*, No. BC 158155 (Cal.Sup.Ct. Sept. 27, 1996). The complaint in that action alleges claims against Quality King and other named defendants, seeking damages and injunctive relief.

for: (1) intentional interference with contract and conspiracy; (2) intentional interference with prospective business advantage and conspiracy; (3) inducing breach of contract and conspiracy; (4) negligent interference with prospective economic advantage and conspiracy; and (5) unfair competition and conspiracy.

The defendant moves to dismiss the Complaint or stay this action pursuant to 28 U.S.C. § 2201 based on the ongoing California lawsuit.

## II. *Discussion*

### A. *Declaratory Judgment Act*

■ At the outset, the Court finds that this lawsuit is governed by federal rather than state law because the Declaratory Judgment Act addresses procedural as opposed to substantive rights. *See Haagen–Dazs Shoppe Co. v. Born*, 897 F.Supp. 122, 126 & n. 2 (S.D.N.Y.1995) (holding that the Declaratory Judgment Act, as opposed to state law, governs cases removed on the basis of diversity jurisdiction under an *Erie* analysis); *De-Feo v. Procter & Gamble Co.*, 831 F.Supp. 776, 779 (N.D.Cal.1993) (same); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950) (recognizing that the Declaratory Judgment Act is procedural in nature and not an extension of federal court jurisdiction).

■ Declaratory judgment actions in the federal courts are governed by 28 U.S.C. § 2201, which provides in relevant part:

(a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, —

U.S. ——, ——, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995), citing, 28 U.S.C. § 2201 (stating that a district court *may* declare the rights and other legal relations of any interested party); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Youell v. Exxon Corp.*, 74 F.3d 373, 375 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 2514, 135 L.Ed.2d 203 (1996); *see generally* E. Borchard, Declaratory Judgments 312–14 (2d ed.1941); E. Borchard, *Discretion to Refuse Jurisdiction of Actions for Declaratory Judgments*, 26 Minn.L.Rev. 677 (1942). The Supreme Court has repeatedly recognized the Declaratory Judgment Act as "an enabling Act" which grants discretion to the district courts rather than an "absolute right" to the litigant. *Wilton*, —— U.S. at ——, 115 S.Ct. at 2143, quoting, *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). Accordingly, where the district court, in an exercise of discretion, determines that a declaratory judgment action will serve no useful purpose, it is not incumbent upon the court to reach the merits of the case. *Id.* As the Supreme Court aptly recognized, quoting the language of Professor Borchard, "[b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* Further, in the seminal case of *Brillhart v. Excess Ins. Co.*, the court noted that:

[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175–76. When considering whether to proceed, *Brillhart* instructs the district courts to determine "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."

*Id.* As the Supreme Court further explained,

> [t]his may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there . . .[,] whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding. . . .

*Id.*

### B. *The defendant's motion*
#### 1. *"First filed" rule*

■ In general, where an action is brought in one federal court and a later action is brought in another federal court or state court, and both actions embrace the same issue, the first court has jurisdiction to enjoin the second prosecution in the absence of a balance of conveniences weighing in favor of the second suit or other special circumstances. *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.1991). This postulate is commonly referred to as the "first filed" or "first to file" rule. *See, e.g., Federal Insurance Co. v. May Dep't Stores Co.*, 808 F.Supp. 347, 350 (S.D.N.Y.1992) ("first filed" rule); *J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 490–91 (S.D.N.Y.1995) ("first to file" rule). The burden of showing such special circumstances or a balance of the conveniences is on the party seeking to proceed with the second action. *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989).

■ One such special circumstance warranting an exception to the first filed rule occurs when a party files a declaratory judgment action after receiving notice of a planned lawsuit by its adversary. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) ("When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum."); *Federal Insurance Co.*, 808 F.Supp. at 349–50 (recognizing that where first suit is filed in response to notice of a planned lawsuit by the plaintiff's adversary, that lawsuit may be dismissed); *Sharimalia Food Corp. v. Monarch Wine Co.*, No. 91–6691, 1992 WL 58308 at *3 (S.D.N.Y. Mar. 13, 1992) (same); *Cooperative Centrale Raiffeisen–Boerenleen Bank v. Northwestern Nat'l Ins. Co.*, 778 F.Supp. 1274, 1278 (S.D.N.Y.1991) (same). However, "[d]eparture from the first filed rule is warranted only after careful consideration of the particular circumstances of a given case taken as a whole." *Federal Ins. Co.*, 808 F.Supp. at 350.

In *Federal Insurance Co.*, the defendant, May Department Stores Company ("May"), wrote to the plaintiff, Federal Insurance Company, on April 20, 1992, advising that if it did not satisfy May's claim by May 15, 1992, May would file suit on that day. *Id.* at 350. On May 11, 1992, Federal Insurance filed the declaratory judgment action in federal district court. *Id.* In applying the special circumstances exception to the first filed rule, the court held that the declaratory judgment action constituted nothing more than forum shopping which undermines the purpose of the Declaratory Judgment Act. *Id.* Further weighing in favor of dismissal was the fact that adjudication of the merits would require interpretation of Missouri, as opposed to New York, law. *Id.* at 350–51. Accordingly, even where a second subsequent lawsuit had not been filed, the declaratory judgment action was dismissed.

On the other hand, in *J. Lyons & Co.*, 892 F.Supp. at 491, the court found insufficient notice of intent to litigate to warrant abrogation of the first filed rule. In that case the plaintiff received "cease and desist" letters, which only mentioned the possibility of litigation. *Id.* The plaintiffs responded to the letters denying the allegations contained therein and the defendant sent a second round of cease and desist letters stating the denials would be taken "under advisement." *Id.* Based on this correspondence, the court held that where the cease and desist letters mentioned only the possibility of litigation, without a specific date or forum, there was an insufficient threat of action to constitute special circumstances necessary to override the first filed rule. *Id.*

Similarly, in *Employers Ins. of Wausau v. Prudential Ins. Co.*, 763 F.Supp. 46, 49 (S.D.N.Y.1991), the district court held that a letter sent by the defendants stating that it "hoped to avoid litigation" was an attempt at settlement rather than an attempt to give notice of a lawsuit. *Id.* Further a second letter stating that the defendant intended to pursue all available remedies, without explicitly mentioning a lawsuit, a tentative filing date or a forum was insufficient to warrant disturbing the first filed rule. *Id.*

■ Applying these factors, the Court finds that KMS has failed to establish special circumstances sufficient to persuade the Court that dismissing or staying this litigation would be appropriate. According to the defendant, this declaratory judgment action was commenced as a result of the August 22, 1996 "cease and desist" letter demanding that Quality King agree in writing no later than September 13, 1996 to stop purchasing and reselling KMS products. However, this letter does not threaten a future lawsuit, let alone set forth a date or forum where such a suit would be commenced. Although there is mention of a prior litigation in *L'anza Research Int'l v. Quality King Distributors, Inc.*, BC089231 (Cal.Sup.Ct.), in which the plaintiff lost a $3.8 million jury verdict for interference with contractual rights, this reference, by itself, is insufficient to constitute notice of an intent to litigate. *See, e.g., J. Lyons & Co.*, 892 F.Supp. at 491 (cease and desist letters mentioning possibility of future litigation without specifying a date or forum is insufficient notice of intent to abrogate first filed rule); *Employers Ins. of Wausau*, 763 F.Supp. at 49 (notice stating that defendant "hoped to avoid litigation" insufficient to warrant exception to first filed rule). Accordingly, in an exercise of its discretion, the Court finds that because the plaintiff's declaratory judgment action was filed first, without sufficient notice of the defendant's intention to file suit in California, KMS' motion to dismiss is denied.

In reaching this conclusion, the Court takes notice of KMS' claim that its August 22, 1996 cease and desist letter is sufficient because the plaintiff, in the Complaint, admits that "[b]y reason of KMS' demand letter, Quality King is in the position of continu-ing its lawful business of purchasing and selling KMS [products] under the cloud and threat of a lawsuit from KMS. . . ." Compl. ¶ 14. In the Court's view, this allegation is insufficient to resurrect the defendant's otherwise deficient argument. Paraphrasing the district court in *J. Lyons & Co.*, even where a letter mentions the possibility of legal actions, without notice of a date or forum, "the cloud and threat of a lawsuit" alone, will not warrant abrogation of the first filed rule. *J. Lyons & Co.*, 892 F.Supp. at 491; *see also Employers Ins. of Wausau*, 763 F.Supp. at 49.

### 2. *Presumption against declaratory judgment actions*

Further, the Court notes the defendant's argument that there is a "presumption" against the exercise of jurisdiction over declaratory judgment actions. In making this argument, KMS relies upon the language in *Brillhart* quoted above, that "[o]rdinarily it would be uneconomical as well as vexatious for federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting similar issues." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175–76. In the Court's view, this language does not rise to the level of creating a presumption against exercising jurisdiction over declaratory judgment actions. Indeed such a presumption would run counter to the notion that the trial court has discretion to determine whether an exercise of such jurisdiction is appropriate on a case by case basis. *See J. Lyons & Co.*, 892 F.Supp. at 491 (rejecting this presumption); *see generally* Grace M. Giesel, *The Expanded Discretion of Lower Courts to Regulate Access to the Federal Courts after Wilton v. Seven Falls Co.: Declaratory Judgment Actions and Implications Far Beyond*, 33 Hous.L.Rev. 393, 396 (1996) ("the abuse of discretion standard of review allows the lower courts to police access to the federal courts, at least in the scenario of declaratory judgments with related state litigation, with the decisions of those courts being largely reversal proof").

### 3. *Easier adjudication of rights in California*

■ KMS also maintains that dismissal or imposition of a stay is appropriate because of the overlap between the issues to be litigated in the instant matter and in the California

action. The complaints in this case and in the California action in part, seek an adjudication as to whether Quality King's purchase and resale of KMS products constitutes intentional interference with contract or violates other common law tort theories: *Compare* Compl. ¶ 18; *with* Compl. ¶¶ 17–26, *KMS Research, Inc. v. Quality King Distributors, Inc.,* BC158155 (Cal.Sup.Ct. September 27, 1996) (California complaint). Further, according to KMS, all necessary parties cannot be joined in the instant action such as the other defendants in the California action which the defendant alleges "are engaged in a conspiracy to wrongfully purchase and distribute KMS products."

In the Court's view, while this argument has some facial appeal, it is insufficient to warrant dismissal or imposition of a stay at this early juncture. Rather, these contentions are better suited as part of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), should KMS choose to make such a motion. In making this statement, the Court makes no determination as to whether, as the plaintiff argues, that there is any meaningful distinction between the allegations set forth in the two complaints in these companion cases.

### 4. *Injury to federal-state relationships*

The defendant further maintains that failure to dismiss or stay this action will injure "federal-state relationships." *See Beacon Constr. Co. v. Matco Elec. Co.,* 521 F.2d 392, 397 (2d Cir.1975). According to KMS, under recent California case law, Quality King would be prohibited from raising its declaratory judgment cause of action by way of a counterclaim. *See Hood v. Superior Court,* 33 Cal.App.4th 319, 39 Cal.Rptr.2d 296 (Ct. App.2d Dist.1995). Accordingly, permitting this action to continue would be tantamount to allowing the plaintiff to do an end run around California law.

In *Hood,* the plaintiff United Chambers Administrators ("UCA") filed suit against John Hood, one of its insurance agents for, among other things, violation of a non-competition clause. Hood cross complained for breach of contract and other unspecified torts. UCA then filed for summary adjudication pursuant to California Code of Civil Procedure section 437c(f)(1). This motion was denied because it failed to dispose of any single cause of action as required by the state statute. *See* Cal.Code Civ.P. § 437c(f)(1). UCA then amended its complaint to add a claim for declaratory relief with respect to the same issue and a subsequent motion for summary adjudication on this claim was granted.

On appeal, the decision of the trial court was reversed. The California appellate court held that the new cause of action for declaratory relief was subsumed in other causes of action and therefore unnecessary and superfluous. Accordingly, the use of this procedural device to circumvent the requirements of California Code of Civil Procedure section 437c(f)(1) was inappropriate.

KMS argues that if this Court denies its motion to dismiss or for a stay, such a decision would be tantamount to permitting Quality King to maintain a declaratory judgment claim where it would otherwise not be permitted to under California law because the claims alleged in the New York complaint would be subsumed in the causes of action alleged in the California complaint. *See Hood,* 33 Cal.App.4th at 323–24, 39 Cal. Rptr.2d at 298–99.

In the Court's view, assuming that there is merit to the defendants' position, a finding that the Court is unwilling to make at this time, this argument seems better suited to motion to transfer venue pursuant to 28 U.S.C. § 1404(a), rather than one to dismiss or to stay. *See J. Lyons & Co.,* 892 F.Supp. at 492 (recognizing familiarity with governing law as reason to grant motion to transfer). Further, at this early stage in the litigation, it is not clear whether California or New York law would govern the issues raised in the Complaint before this Court because it is not clear where the facts underlying Quality King's claims took place.

### 5. *Forum shopping*

Finally, KMS argues that its motion should be granted because permitting this action to continue would foster forum shopping. *See Great American Ins. Co. v. Houston Gen. Ins. Co.,* 735 F.Supp. 581, 586 (S.D.N.Y.1990) (recognizing that the Declaratory Judgment Act should not be used as a tool for forum shopping). According to the defendant, based on the facts set forth above, "[t]here can be no question that Quality King

filed the instant declaratory judgment action in an attempt to deprive KMS of [its] choice of forum." On August 22, 1996, KMS sent the demand letter which "reminded Quality King of the large punitive damage judgment it sustained in a suit brought by another manufacturer ... in ... California." As a result, according to the defendant, the plaintiff made a preemptive strike against a second large verdict by filing suit in New York. The Court is unpersuaded.

There is simply no way for the Court to determine at this juncture the motivation for the plaintiff's decision to file this lawsuit in New York. Accordingly, in an exercise of its discretion under *Wilton* and *Brillhart*, the Court, at this time, declines to impose the sanctions of dismissal or a stay based on a finding of forum shopping.

III. *Conclusion*

After reviewing the parties' submissions, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendant's notion to dismiss, or in the alternative for a stay, of this case is denied.

SO ORDERED.