*Sasson v. Mann*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of May, two thousand twenty-two.

PRESENT:
> JON O. NEWMAN,
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

URI SASSON, ARNOLD GARELICK,

> *Plaintiffs-Counter-Defendants-Appellees*,

v.                                                                          No. 21-922

HOWARD MANN, as the Personal Representative of the Estate of Philip Mann,

> *Defendant-Counter-Claimant-Appellant.*

_____

FOR APPELLANT:                    RICHARD M. MAHON, II (Michael R. Frascarelli, *on the brief*), Catania, Mahon & Rider, PLLC, Newburgh, NY.

FOR APPELLEES:                    BARRY S. KANTROWITZ, Kantrowitz, Goldhamer & Graifman P.C., Chestnut Ridge, NY, *for* Arnold Garelick.

                                  ASHTON R. WATKINS, Law Office of Ashton R. Watkins, Los Angeles, CA, *for* Uri Sasson.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Howard Mann, as representative of the estate of Philip Mann (the "Estate"), appeals from a judgment entered in the Southern District of New York in favor of Plaintiffs-Appellees Uri Sasson and Arnold Garelick on claims arising out of a dispute over ownership rights to a portion of a family business.

Plaintiffs are two brothers-in-law who, for decades, ran various real estate companies with their father-in-law, Philip Mann. In 1997, to resolve certain disagreements that had arisen between them, Philip and Plaintiffs executed a

written agreement restructuring their businesses (the "1997 Agreement").   They created a new limited liability company, Associates of Rockland County, LLC ("AORLLC"), in which Philip retained a one-third interest.   They also executed an Operating Agreement for AORLLC and a Pre-Incorporation Agreement for another entity, AORINC.

Under section 3.4 of the 1997 Agreement, Philip agreed that, upon his death, he would bequeath his interest in AORLLC to Plaintiffs in equal shares; if he did not, Plaintiffs would have the option to purchase Philip's interest from his Estate for $1,000. [1]   Philip died in 2014 and left everything to Defendant, his son. Philip's will was admitted into probate in Florida, and Defendant was appointed executor of the Estate.   Because Philip's will did not leave his AORLLC interest to Plaintiffs, Plaintiffs sent written notices to the Estate of their intent to exercise their option to purchase the one-third interest.   Defendant refused their request, and this lawsuit followed.

The district court ultimately granted summary judgment in favor of Plaintiffs and entered a declaratory judgment that, under the 1997 Agreement, the

---

[1] This agreement was contingent upon the satisfaction of three conditions precedent.   For the purposes of this appeal, the parties do not dispute that those conditions were satisfied.

3

Estate is obligated to sell its one-third interest in AORLLC to Plaintiffs for $1,000. Defendant now appeals that judgment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On appeal, Defendant argues that the district court lacked subject-matter jurisdiction over this dispute because Plaintiffs' claims are barred by the "probate exception" to diversity jurisdiction or, alternatively, because the claims fail to satisfy the $75,000 amount-in-controversy requirement under 28 U.S.C. § 1332(a). Defendant also contends that the district court erred in determining that (a) Plaintiffs had validly exercised their option to purchase the Estate's interest under the 1997 Agreement; and (b) Philip and Plaintiffs had orally modified the Agreements, thus barring Defendant's counterclaims, which were based on Plaintiffs' alleged violations of the written contracts.

## I.     Subject Matter Jurisdiction

In reviewing questions of subject matter jurisdiction, the Court "review[s] legal conclusions *de novo* and factual findings for clear error." *Nouritajer v. Jaddou*, 18 F.4th 85, 88 (2d Cir. 2021).

4

### A. Probate Exception

"The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir. 2007). It reserves to state probate courts "the administration of a decedent's estate" and "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* (quoting *Marshall v. Marshall*, 547 U.S. 293, 312 (2006)).

The probate exception has "limited application," *id.* at 106, and does not "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction," *id.* at 105 (quoting *Marshall*, 547 U.S. at 312). "[W]here exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction." *Id.* at 106. In other words, "so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Id.*

Here, we conclude that Plaintiffs' claims are not barred by the probate exception. As an initial matter, we note that the dispute over the parties' respective rights under the 1997 Agreement cannot be adjudicated in the Florida probate court. Plaintiffs filed claims against the Estate in probate court, but because Defendant had objected to them, Florida law required Plaintiffs to "file 'independent actions' against the Estate to prove the validity of their claims." App'x at 153. And as the Florida civil court explained, "'[i]ndependent actions' are not filed in probate court."[2] App'x at 153 (citing Fla. Stat. § 733.705(5) (2016)); *see also West v. West*, 126 So.3d 437, 438 (Fla. Dist. Ct. App. 2013) (recognizing that "independent actions" are properly filed in Florida civil court, not probate court). That the parties' rights to the AORLLC interest will not be adjudicated by the probate court strongly undercuts Defendant's argument that exercising federal jurisdiction over this dispute would impermissibly interfere with the Florida probate court's control over the AORLLC interest.

More fundamentally, however, Plaintiffs' claims are not barred because the district court did not need to "exercise control over a res in the custody of a state

---

[2] After Plaintiffs filed their claims in probate court, Defendant filed an anticipatory lawsuit in Florida civil court asking the court to declare section 3.4 of the 1997 Agreement unenforceable. The state court dismissed the action on the grounds of forum non conveniens, holding that "the State of New York, rather than Florida, is the proper forum" for the dispute. App'x at 159.

6

court" in order to grant Plaintiffs' requested relief. *Lefkowitz*, 528 F.3d at 106. Plaintiffs' amended complaint sought a declaratory judgment that, under the 1997 Agreement, the Estate is "obligated to transfer" the Estate's interest to Plaintiffs or, alternatively, that "the Estate is obligated to sell" its interest to Plaintiffs. App'x at 94. The district court ultimately entered a declaratory judgment that, under the 1997 Agreement, "Defendant is obligated to sell the interest of the Estate of Philip Mann in [AORLLC] to the Plaintiffs, Uri Sasson and Arnold Garelick, for one thousand dollars ($1,000)." Sp. App'x at 122.

Contrary to Defendant's assertion, the district court's judgment did not amount to an order of specific performance. Rather, the district court simply declared Plaintiffs' rights under the contract. Its judgment, therefore, "does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Lefkowitz*, 528 F.3d at 108 (quoting *Marshall*, 547 U.S. at 310) (alterations omitted). Unlike claims seeking, for example, the "disgorgement of funds" from an estate, the claims here did not require the district court to "assert control" over the AORLLC interest. *Id.* at 106–07. "While the Florida probate court will be obliged to give full faith and credit to the district court's adjudication,

7

it will continue to administer the [Estate] . . . free from federal interference."

*Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1072 (2d Cir. 1990).

Plaintiffs' claims are therefore not barred by the probate exception.

### B. Amount in Controversy

Plaintiffs' claims also easily satisfy the minimum amount in controversy to confer federal diversity jurisdiction under 28 U.S.C. § 1332(a).   In an action for a declaratory judgment, "the amount in controversy is measured by the value of the object of the litigation."   *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020) (internal quotation marks omitted).   Defendant argues that the one-third interest in AORLLC does not exceed $75,000 because Philip had agreed to bequeath his interest as a "gift" or to sell it for merely $1,000.   But regardless of whether *Philip* considered his interest in AORLLC "nominal," the fact remains that AORLLC owns commercial real estate worth millions of dollars.   To the *parties*, a one-third interest in AORLLC is very valuable – indeed, they have expended untold resources throughout years of litigation over it.   *See Beacon Const. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of

8

the consequences which may result from the litigation."). The amount in controversy therefore clearly surpasses the jurisdictional threshold.

## II. Summary Judgment

The Court "review[s] *de novo* the award of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all ambiguities in its favor." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotation marks and alterations omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. (quoting Fed. R. Civ. P. 56(a)).

### A. The Option

The district court correctly concluded that, based on the undisputed evidence, Plaintiffs validly exercised their option to purchase the Estate's one-third interest in AORLLC. Section 3.4 of the 1997 Agreement provided that, if certain conditions were satisfied and Philip failed to bequeath his interest in AORLLC to Plaintiffs in his will, Plaintiffs "shall have an option to purchase Philip's interest in [AORLLC] at any time after Philip's death (but not later than one year after his death) for a total purchase price of $1,000. This option shall be

9

exercised by written notice to the Executor of Philip's estate within the option period referred to above."   App'x at 65–66.

After Philip's death, each Plaintiff timely sent written notice to the Estate indicating his intent to exercise the option, and Sasson's notice also included a check for $1,000.   Defendant nonetheless argues that this was insufficient notice under the contract because Philip had agreed to bequeath his interest to Plaintiffs "in equal shares," and so Plaintiffs' "separate, distinct and individual attempts to secure the entire interest were counteroffers."   Mann's Br. at 34.

Section 3.4, however, contains no requirement that the option be exercised "jointly," and under New York law – which governs this dispute – "courts will not imply a term which the parties themselves failed to insert."   *Mitchell v. Mitchell*, 440 N.Y.S.2d 54, 55 (2d Dep't 1981).   Section 3.4 requires only that the notice be "written" and that it be sent within one year of Philip's death; the contract imposes no other restrictions on the form or manner of notice.   App'x at 65–66; *see Kaplan v. Lippman*, 75 N.Y.2d 320, 325 (1990) ("The optionee must exercise the option in accordance with its terms within the time and in the manner specified in the option.") (internal quotation marks omitted).   Plaintiffs therefore validly exercised their option under the 1997 Agreement.

10

**B. Oral Modification**

Finally, the district court properly granted summary judgment in favor of Plaintiffs because the undisputed evidence established an oral modification to the Agreements, thus barring Defendant's counterclaims.

Defendant brought ten counterclaims on behalf of the Estate. All were based on the same underlying theory that, from 1997 onward, Plaintiffs improperly disregarded Philip's rights as a member in AORLLC, failed to consult with him on important management decisions, and did not distribute to him his share of the company's profits. Defendant claimed that these actions violated various provisions of AORLLC's Operating Agreement and AORINC's Pre-Incorporation Agreement.

Plaintiffs do not dispute that their post-1997 behavior was inconsistent with certain provisions of the Agreements, but they argue that they were acting in accordance with an oral modification made at Philip's request. Specifically, Philip wanted to exit the family business and retire, but he also wanted to avoid the tax consequences of selling his membership interest outright. Philip and Plaintiffs therefore orally agreed that his interest would be "nominal" (i.e., on

11

paper only) so he could avoid the tax implications of a sale, and Philip would otherwise remove himself from the company.

Plaintiffs proffered ample evidence at summary judgment in support of this oral modification, including testimony from AORLLC's accountant and lawyer; tax forms reflecting that Philip's profit percentage in AORLLC was zero for more than a decade; testimony that Philip had never complained about the tax forms or the running of AORLLC; and the 1997 Agreement itself, which suggested that Philip had intended to retain only a nominal interest in AORLLC. Defendant offered virtually no countervailing evidence, and the district court concluded that "[t]he evidence is so one-sided that [Plaintiffs] must prevail as a matter of law." Sp. App'x at 46 (internal quotation marks omitted). On appeal, Defendant points to no evidence overlooked by the district court.[3] He primarily resorts to attacking the admissibility of the evidence and the enforceability of the oral agreement. But none of his arguments is persuasive.

---

[3] Defendant disputes the authenticity of a letter purporting to show that Philip resigned from AORLLC, but Plaintiffs made a substantial showing of other, undisputed evidence in support of an oral modification. The letter was therefore not necessary to the district court's conclusion. Defendant also points to a single statement made by Plaintiff Sasson during a deposition, in which he stated that he was unaware of any "oral or written agreements concerning [Philip's] resignation from [AORLLC]." Mann's Br. at 41 (quoting App'x at 3252). But the district court already addressed this "snippet" of evidence, correctly concluding that this single statement – devoid of any context – was insufficient to create a genuine dispute of material fact as to an oral modification. Sp. App'x at 62.

First, the oral agreement was not barred by a clause in the Operating Agreement prohibiting oral modifications. Generally, written agreements expressly proscribing oral modifications cannot be modified except by a signed writing. *Turk v. Anello*, 721 N.Y.S.2d 122, 123 (3d Dep't 2001) (citing New York General Obligations Law § 15-301(1)). New York law, however, recognizes several exceptions to this general prohibition: full or partial performance, equitable estoppel, and waiver. *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343–44 (1977). Here, the uncontroverted evidence establishes that "all acts expressly or implicitly required by the [oral modification] were fully performed." *Maynard Ct. Owners Corp. v. Rentoulis*, 652 N.Y.S.2d 664, 666 (1997) (internal quotation marks omitted). From 1997 until his death, Philip avoided paying taxes on his substantial negative capital account *and* avoided the risk of financial loss during his retirement – all in exchange for forgoing his right to participate in AORLLC's management or share in its profits.[4] At the very least, there was clearly partial performance because the post-1997 behavior (such as AORLLC's tax forms reflecting that Philip stopped drawing his share of partnership profits) is

---

[4] The oral modification was also clearly supported by consideration, as Philip was able to avoid a substantial tax bill (and the risk of losing his retirement savings), while Plaintiffs were able to reap greater rewards from incurring all the risk of running the business.

13

"explainable only with reference to the oral agreement." *Anostario v. Vicinanzo*, 59 N.Y.2d 662, 664 (1983); *see also Rose*, 42 N.Y.2d at 343 ("[P]artial performance [must] be unequivocally referable to the new contract.").

Second, the oral modification was not barred by the various provisions of New York's Limited Liability Company Law cited by Defendant. Sections 102(r) and 601 simply define a "membership interest"; nothing in these provisions suggests that a member cannot withdraw or modify that interest. *See* N.Y. Limited Liab. Co. L. §§ 102(r), 601. Section 417(b) prohibits amendment regarding allocation of income or losses "without the written consent of each member adversely affected thereby." *Id.* § 417(b). But there is no indication that Philip was "adversely affected" by the oral modification; on the contrary, the modification was made for his benefit.

Under section 606(a), a member can withdraw from a limited liability company only "in accordance with the operating agreement." *Id.* § 606(a). Here, the parties complied with this rule; AORLLC's Operating Agreement provided that any member can withdraw with "the prior consent of the remaining members," App'x at 113, and both Plaintiffs undisputedly consented to Philip's withdrawal from the management of AORLLC. Finally, section 509 states that,

14

upon withdrawal, the withdrawing member is entitled to receive "the fair value of his or her membership interest in the limited liability company." *Id*. § 509. Philip, however, had already negotiated payment for his interest under the 1997 Agreement, and otherwise maintained a nominal interest only for tax purposes. There is no evidence that Philip was entitled to or expected any further payment for his membership interest.

Third, Plaintiffs' evidence in support of an oral modification was not barred by the "Dead Man's Statute," N.Y. C.P.L.R. § 4519. This statute "disqualifies parties interested in litigation from testifying about personal transactions or communications with deceased . . . persons." *Sepulveda v. Aviles*, 762 N.Y.S.2d 358, 365 (1st Dep't 2003) (internal quotation marks omitted). But the statute does not bar the testimony of disinterested non-party witnesses like AORLLC's tax accountant or its attorney. Nor does it bar Plaintiffs' "observations of [Philip's] conduct and demeanor," *id.* at 366, such as their testimony that AORLLC operated without Philip's involvement.

The district court therefore properly granted summary judgment in favor of Plaintiffs on Defendant's counterclaims.

### III.  Conclusion

We have considered Defendant's remaining arguments and find them to be

meritless.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court