19-225-cv

*Washington National Insurance Co. v. OBEX Group LLC, and Randall Katzenstein*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2019

(Argued: November 5, 2019     Decided: May 1, 2020)

Docket No. 19-225-cv

───────────────────────

WASHINGTON NATIONAL INSURANCE COMPANY,
*Petitioner-Appellee,*

v.

OBEX GROUP LLC, AND RANDALL KATZENSTEIN,
*Respondents-Appellants.*

───────────────────────

Before:     SACK AND HALL, *Circuit Judges*, AND RAKOFF, *District Judge*.[1]

The petitioner-appellee Washington National Insurance Company

petitioned the United States District Court for the Southern District of New York

under section 7 of the Federal Arbitration Act to enforce two arbitration

summonses requiring two non-parties to the arbitration, the respondents-

appellants OBEX Group LLC and Randall Katzenstein, to testify at a hearing and

to produce certain documents.  The respondents moved to dismiss the petition,

───────────

[1] Judge Jed S. Rakoff, of the United States District Court for the Southern District of
New York, sitting by designation.

alleging lack of subject matter jurisdiction under 28 U.S.C. § 1332, and to quash the summonses. They asserted that the district court was obliged to "look through" the section 7 petition to the parties to the underlying arbitration, which were not diverse, to determine diversity jurisdiction, and that it was required to quash the summonses because, *inter alia*, they were overbroad, unduly burdensome, and required production of privileged documents. The district court (Vincent L. Briccetti, *Judge*) denied both motions. The respondents challenge these rulings on appeal. We conclude that the district court had subject matter jurisdiction based on the diversity of citizenship of the parties to the petition. We conclude also that the district court was not required to consider the respondents' challenges to the petition in the first instance. Accordingly, the judgment of the district court is

     AFFIRMED.

HELEN B. KIM, Thompson Coburn LLP, Los Angeles, CA, *for Respondents-Appellants*.

RICHARD H. EPSTEIN (Joseph L. Buckley and Matthew L. Lippert, *on the brief*), Sills Cummis & Gross P.C., New York, NY, *for Petitioner-Appellee.*

SACK, *Circuit Judge*:

This case concerns section 7 of the Federal Arbitration Act (the "FAA").

Section 7 provides that in an arbitration, the arbitrators, or a majority of them,

"may summon in writing any person to attend before them or any of them as a

witness and in a proper case to bring with him or them any book, record,

document, or paper which may be deemed material as evidence in the case."  9

U.S.C. § 7.  If a person so summoned refuses to obey the summons,

> upon petition the United States district court for the
> district in which such arbitrators, or a majority of them,
> are sitting may compel the attendance of such person or
> persons before said arbitrator or arbitrators, or punish
> said person or persons for contempt in the same manner
> provided by law for securing the attendance of witnesses
> or their punishment for neglect or refusal to attend in the
> courts of the United States.

*Id.*

In an arbitration to which the petitioner-appellee Washington National

Insurance Company was a party, the arbitration panel summoned the

respondents-appellants OBEX Group LLC and Randall Katzenstein to testify at a

hearing and to bring with them specified documents.  The respondents did not

appear.  The petitioner, invoking the court's diversity jurisdiction, then

petitioned the United States District Court for the Southern District of New York

to enforce the summonses under section 7.

3

The respondents moved to dismiss the petition. They argued that the court lacked subject matter jurisdiction because it was required to "look through" the section 7 petition to the parties to the underlying arbitration, which were not diverse. They further argued that even if the court were to look only to the parties to the petition, the court lacked jurisdiction because the petitioner had failed to join a necessary and indispensable party whose joinder would destroy diversity and the petition failed to meet the amount in controversy requirement. The district court disagreed and denied the motion.

The respondents next moved to quash the summonses. They argued that the summonses were invalid under section 7 because they required impermissible pre-hearing discovery and privileged information, and were duplicative, overbroad, and burdensome. The district court again disagreed and denied the motion.

On appeal, the respondents argue that the court erred in denying both motions. For the reasons set forth below, we conclude that the respondents' arguments are without merit. We therefore affirm the judgment of the district court.

# BACKGROUND

*Factual Background*

The petitioner is Washington National Insurance Company ("WNIC"). In 2013, WNIC and its affiliate, Bankers Conseco Life Insurance Company ("BCLIC," together with WNIC, the "claimants"), sought reinsurance for certain "long term care blocks of business." Claimants' Demand for Arbitration, 11/21/2018, ¶ 10. Several reinsurance companies, including one called Beechwood Re Ltd. ("Beechwood"), were interested in providing the reinsurance.

Beechwood was founded by Murray Huberfeld, Mark Nordlicht, Moshe M. Feuer, Scott Taylor, and David Levy. According to the claimants, Feuer and Taylor had "sterling reputations." *Id.* ¶ 11. Huberfeld and Nordlicht, however, did not. Huberfeld had a criminal record, and Nordlicht had a reputation for "making speculative investments with unsavory companies." *Id.* ¶ 8. In addition, Huberfeld and Nordlicht owned and managed Platinum Partners, LP ("Platinum"), an investment fund which, according to the claimants, was known for making "high-risk and speculative investments" with "disreputable principals and companies," *id.* ¶ 2, and generally shunned by institutional investors like WNIC and BCLIC.

Further, according to the Claimants' Demand for Arbitration, Feuer and Taylor, in their discussions with the claimants about a potential reinsurance agreement, represented that they and Levy alone owned Beechwood. They did not disclose that Beechwood was in fact largely capitalized by Nordlicht. Nor, according to the claimants, did they disclose Beechwood's ties to Platinum, Huberfeld, or Nordlicht.

In February 2014, WNIC and BCLIC selected Beechwood to provide the reinsurance based on the "sterling reputations" of Feuer and Taylor and their representations that Beechwood would "expertly administer policy claims and prudently invest trust assets." *Id.* ¶ 11. Once the reinsurance agreement was finalized, however, Huberfeld and Nordlicht allegedly took "control of [the] reinsurance trust fund assets," *id.* ¶ 5, and used them as "Platinum's piggybank," *id.* ¶ 21. The claimants state that they were unaware of this arrangement until the summer of 2016, when it was reported in *The Wall Street Journal*.

Following the *Journal* and other publications' reports of Beechwood's ties to Platinum, the claimants began their own audit and investigation. According to the claimants, the investigation revealed, among other things, that Beechwood had "engaged in a continuous stream of misrepresentations . . . concerning

Beechwood's ownership structure, the nature and value of assets in the trusts, [and] Beechwood's relationship with Platinum," *id.* ¶ 35, to trick the claimants "into indirectly investing with Platinum," *id.* ¶ 42.

The claimants brought an arbitration claim against Beechwood alleging fraud and seeking approximately $134 million in damages. During the arbitration, the claimants sought documents and testimony from one of Platinum's broker-dealers, OBEX Securities LLC, and Randall Katzenstein, the president and chief executive of OBEX Group LLC, the parent company of OBEX Securities LLC. Katzenstein and OBEX Group LLC (together, the "respondents") are the respondents in this action.

The arbitration panel issued subpoenas duces tecum to the respondents on February 22, 2018, requiring them to appear as witnesses at a hearing on March 26, 2018, and to bring with them documents identified in the instructions appended to the subpoenas. The respondents filed objections to the subpoenas on March 14, 2018.

The following week, the claimants and respondents agreed to narrow a set of search terms that the respondents would use to locate the subpoenaed documents. While so doing, the claimants reserved their right to "come back to

7

[the respondents]" if the terms did not "yield the appropriate responsive documents," Email message from Richard Epstein to Helen Kim, March 19, 2018, Joint App'x at 288, and the respondents made clear that they were not waiving any of their objections to the subpoenas. In addition, the claimants requested that the respondents produce the documents without appearing for a hearing. The respondents agreed. The parties agreed also to extend the subpoenas' deadline.

On April 11, 2018, the respondents responded to the subpoenas, producing 14,814 pages of documents. They asserted that the production cost them $15,700.25 in attorney's fees and costs.

Approximately four months later, in a document produced by a different non-party to the arbitration, the claimants received a copy of an email that purportedly was responsive to the OBEX and Katzenstein subpoenas but was not included in the respondents' April 11, 2018 production. The claimants informed the respondents of the missing email and suggested that they run a narrow search to locate any other responsive documents excluded from the April production.

The respondents refused.  They asserted that the email was not responsive to the narrowed list of search terms to which the parties had agreed in March, and they already had "fully complied" with their obligations vis-à-vis the subpoenas.  Email message from Helen Kim to Richard Epstein, August 8, 2018, Joint App'x at 296.  The respondents then announced that they would not "incur any further costs in connection with this subpoena unless ordered by a court."  *Id*.

Following this exchange, the claimants asked the arbitration panel to issue summonses to the respondents requiring them to appear at a hearing and to bring with them all responsive documents.  The panel did so on August 24, 2018, ordering the respondents to appear before it for such a hearing at the offices of Proskauer Rose LLP in New York City on October 15, 2018.

The respondents replied that they would be willing to comply with the summonses and provide the requested documents – again without a hearing – if the claimants would reimburse them for the cost of production.  According to the respondents, the claimants refused.  The respondents then served written objections to the summonses on the claimants' counsel on October 1, 2018.  They allegedly informed the claimants that they could not appear on the scheduled day because Katzenstein would be out of the country.  WNIC contends that the

9

respondents had no intention of appearing regardless of the date in light of their earlier unequivocal refusal to produce any additional documents absent a court order.

In any event, the arbitration panel held the hearing as scheduled on October 15, 2018, with a court reporter present. The panel was prepared to receive testimony and documentary evidence from the respondents and to rule on any evidentiary issues. The respondents, however, did not appear. The panel therefore issued an order granting the claimants leave to pursue judicial intervention to obtain the respondents' compliance with the summonses.

*Procedural History*

On October 22, 2018, WNIC filed a petition in the United States District Court for the Southern District of New York seeking enforcement of the summonses under section 7 of the FAA. WNIC invoked the court's diversity jurisdiction based on its domicile in Indiana and the respondents' in New York. BCLIC, WNIC's co-claimant in the arbitration and a New York domiciliary, did not join the petition.

The respondents moved to dismiss the petition arguing that the court lacked diversity jurisdiction under 28 U.S.C. § 1332 for three reasons. First, they

argued, our decision in *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005) requires a district court to "look through" a section 7 petition to the parties to the underlying arbitration to determine whether there is diversity of citizenship, which here there is not.  Second, they argued, even if the court considered only the parties to the petition, BCLIC was a necessary and indispensable party that could not be joined without destroying diversity.  And third, they asserted, WNIC had failed to meet the amount in controversy requirement.

On December 10, 2018, the district court (Vincent L. Briccetti, *Judge*) denied the motion.  It rejected the respondents' interpretation of *Stolt-Nielsen*, *supra*, and concluded that WNIC had sufficiently alleged diversity among the parties to the petition.  It noted that the respondents had never moved to join BCLIC as a necessary party under Federal Rule of Civil Procedure 19.  And it explained that in actions seeking declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation."  Here, WNIC sought to enforce summonses requiring the respondents to produce evidence in an arbitration proceeding in which they claimed $134 million in damages.

Following the court's ruling, the respondents filed their answer to the petition and two motions.  The first motion was for reconsideration of the district

11

court's order denying their motion to dismiss, and the second was to quash the summonses.

In their motion for reconsideration, the respondents reiterated their arguments regarding the citizenship of the parties to the underlying arbitration and the amount in controversy. They also advanced a new argument: that WNIC had failed to establish a venue requirement – specifically, that a section 7 petition must be filed in the district in which the arbitrators, or a majority of them, sit. The respondents argued that a majority of the arbitrators did not "sit" in the Southern District of New York because their ordinary places of business are located elsewhere, and they had sat previously for a hearing in the Eastern District of Pennsylvania.

In the motion to quash the summonses, the respondents argued that the summonses: (1) sought impermissible pre-hearing discovery, (2) were overbroad and would subject respondents to undue burden, and (3) sought privileged information.

On January 18, 2019, the district court issued an opinion and order denying both motions and granting WNIC's petition. It concluded that the motion for reconsideration was groundless because it did not raise any

controlling precedent or facts that the court had overlooked and was nothing more than an attempt to relitigate the motion to dismiss. The court denied the motion to quash, concluding that the summonses properly required documents in connection with a hearing rather than pre-hearing discovery, and that any overbreadth, privilege, or undue burden objections were issues better left to the arbitration panel to resolve.

The respondents filed timely appeals from the district court's rulings denying their motions to dismiss the petition and to quash the summonses and granting WNIC's petition. In addition, they requested a stay pending appeal of the court's order granting the petition, which the court denied.

The arbitration panel subsequently ordered the respondents to appear for a hearing and provide testimony and documents as directed in the August 24, 2018 summonses. According to WNIC, after some negotiation between the respondents and the panel, the respondents produced 11,098 pages of documents and agreed to do so without appearing for a hearing. In addition, prior to oral argument, the parties to the underlying arbitration settled their dispute.

## DISCUSSION

The respondents raise four arguments on appeal.

First, they argue that the district court erred in denying their motion to dismiss for lack of diversity jurisdiction, largely repeating the arguments made to and rejected by the district court. Specifically, they contend that: (1) the district court was obliged to "look through" the section 7 petition to the parties to the underlying arbitration, which were not diverse; (2) even if the district court looked only to the parties to the petition, they were not diverse because WNIC had failed to "name a necessary and indispensable party" domiciled in the same state as the respondents, Resp. Br. at 29; and (3) WNIC had failed to meet the amount in controversy requirement.

Second, the respondents assert that the summonses did not comply with section 7 of the FAA because they required immaterial documents and impermissible pre-hearing discovery.

Third, the respondents contend that the district court erred in denying the motion to quash and granting the petition without considering their objections to the summonses based on duplication, overbreadth, undue burden, and privilege.

Fourth, they assert that the district court lacked authority to grant the petition because it was filed in the Southern District of New York – a district in

14

which, the respondents contend, the arbitrators did not "sit" for purposes of section 7.

We conclude that each of the respondents' arguments is without merit. We therefore affirm the judgment of the district court.

## I.    Mootness

Although the issue is not raised by any of the parties, we address first whether two events subsequent to the district court's decisions – the respondents' alleged compliance with the summonses and the arbitration settlement – moot the issues on appeal. We conclude that they do not because the respondents have and maintain a privacy interest in the documents that they produced and would be entitled to the return of those documents if successful on appeal. *See Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 214 n.4 (2d Cir. 2008) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–13 (1992); and *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 469 (2d Cir. 1996)).

## II.    Subject Matter Jurisdiction

"'When reviewing a district court's determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de*

*novo*.'" *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 81 (2d

Cir. 2000) (quoting *In re Vogel Van & Storage, Inc.*, 59 F.3d 9, 11 (2d Cir. 1995)).

The FAA "'is something of an anomaly in the realm of federal legislation:

It bestows no federal jurisdiction but rather requires for access to a federal forum

an independent jurisdictional basis over the parties' dispute.'" *Doscher v. Sea Port*

*Group Sec., LLC*, 832 F.3d 372, 380 (2d Cir. 2016) (quoting *Vaden v. Discover Bank*,

556 U.S. 49, 59 (2009)). Thus, a party invoking section 7 of the FAA "must

establish a basis for subject matter jurisdiction independent of the FAA." *Stolt-*

*Nielsen*, 430 F.3d at 572.

The case at bar concerns the source of federal subject matter jurisdiction

based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. In relevant part,

that statute establishes that diversity jurisdiction exists over civil actions between

"citizens of different States," "where the matter in controversy exceeds the sum or

value of $75,000." 28 U.S.C. § 1332(a). For purposes of the statute, a corporation

is a citizen of the state in which it has its principal place of business and every

state in which it has been incorporated. *Id.* § 1332(c)(1). It is axiomatic that

"diversity jurisdiction is available only when all adverse parties to a litigation are

completely diverse in their citizenships." *Herrick Co. v. SCS Commc'ns, Inc.*, 251

F.3d 315, 322 (2d Cir. 2001).

1. *Diversity of Citizenship*

The respondents argue that all adverse parties to this litigation are not

completely diverse because BCLIC, WNIC's co-claimant in the arbitration, is a

citizen of New York. In the respondents' view, our decisions in *Doscher v. Sea*

*Port Group Securities, LLC*, 832 F.3d 372, 386 (2d Cir. 2016), and *Stolt-Nielsen SA v.*

*Celanese AG*, 430 F.3d 567, 572 (2d Cir. 2005),[2] and the Supreme Court's decision

in *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009), require courts to "look through"

an FAA petition to the underlying arbitration to determine diversity of

citizenship. But *Stolt-Nielsen* does not support this proposition.[3] And *Doscher*

and *Vaden* each addresses federal-question jurisdiction pursuant to 28 U.S.C. §

1331, not diversity jurisdiction under § 1332. They establish the principle that the

---

[2] The respondents rely also on our ruling in a summary order, *Giusti v. Morgan Stanley Smith Barney, LLC*, 581 F. App'x 34 (2d Cir. 2014) (summary order).

[3] In *Stolt-Nielsen*, we found subject matter jurisdiction over a dispute arising from arbitration subpoenas based on the findings that the district court had maritime jurisdiction over a prior application to stay the underlying arbitration and that, having done so, the district court "retained subject matter jurisdiction under 28 U.S.C. § 1333(1) over any later applications or petitions arising out of the parties' arbitration, including the motions to compel and quash that form the basis of this appeal." *Stolt-Nielsen*, 430 F.3d at 573.

"existence of federal-question jurisdiction over an FAA petition turns on whether

the district court would possess jurisdiction over the underlying dispute under

the standards of § 1331." *Doscher*, 832 F.3d at 388. Courts, then, must "look

through" an FAA petition to determine their jurisdiction under section 1331.

The same is not true of jurisdictional inquiries under section 1332. In

*Hermès of Paris, Inc. v. Swain*, 867 F.3d 321 (2d Cir. 2017), we explained that when

> evaluating whether the requirement of complete
> diversity is satisfied, a court assessing its jurisdiction
> over an FAA petition is to 'look only to the citizenship of
> the parties in the action before it' – that is, the 'parties to
> the petition to compel' as well as any indispensable
> parties who must be joined pursuant to Federal Rule of
> Civil Procedure 19.

*Id.* at 324 (brackets omitted) (quoting *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438,

445–46 (2d Cir. 1995)). As a result, the district court correctly considered only the

parties to the petition when ruling on the respondents' motion asserting lack of

jurisdiction under section 1332.

2. *Necessary Joinder Under Rule 19*

Perhaps in light of this well-established rule, the respondents argue that

even if the court were to look only to the parties to the petition, they still would

18

lack complete diversity because WNIC had failed to join BCLIC as a necessary

and indispensable party.

Federal Rule of Civil Procedure 19(a)(1) provides that a person or entity is

a necessary party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). A necessary party must be joined as a party to the action

unless joinder would deprive the court of subject matter jurisdiction. *Id.* In those

circumstances, the court must assess whether "in equity and good conscience, the

action should proceed among the existing parties or should be dismissed" by

considering the factors provided in Rule 19(b). Fed. R. Civ. P. 19(b).

BCLIC is not a necessary party under Rule 19(a)(1)(A) because the district

court could – and indeed did – afford complete relief notwithstanding BCLIC's

absence. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006). Nor is it a necessary party under Rule 19(a)(1)(B) because it fails to satisfy a threshold requirement: The "'absent party . . . must claim an interest' for [Rule 19(a)(1)(B)] purposes." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 683 (2d Cir. 1996) (quoting *Peregrine Myanmar Ltd. V. Segal*, 89 F.3d 41, 49 (2d Cir. 1996)). BCLIC never did so. *Cf. id.* ("[The purported necessary party] has clearly declined to claim an interest in the subject matter of this dispute."). BCLIC therefore is not a necessary party, let alone an indispensable party, under Rule 19.

### 3. *Amount in Controversy*

The respondents argue that even if the parties were diverse, the court still lacks subject matter jurisdiction under 28 U.S.C. § 1332 because the value of "obtaining Appellants' testimony and documents" does not exceed $75,000. Resp. Br. at 31. We disagree.

In actions for declaratory or injunctive relief, which are equitable in nature, "the amount in controversy is measured by the value of the object of the litigation." *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 276 (2d Cir. 2006) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).

"'[T]he sum claimed by the [petitioner] controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal.'" *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) (emphasis in *Whitchurch*)); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) (stating that if "the damages sought are uncertain, the doubts should be resolved in favor of the plaintiff's pleadings").

WNIC sought an arbitral award of $134 million. The documents responsive to the summonses that are the subject of this section 7 petition are relevant to whether WNIC is entitled to all or part of that award.[4] WNIC does not claim an exact value; it claims only that the value of the documents "exceeds the sum or value of $75,000." Petition to Enforce Arbitration Summonses, Joint App'x at 11. It does not appear to a legal certainty that the amount is really for less because even if the documents required by the summonses "pertain to only a small fraction of [the award sought], the amount in controversy requirement

---

[4] The settlement of the underlying dispute does not affect whether the amount in controversy exceeded $75,000 because the presence of diversity jurisdiction – including the amount in controversy requirement – is measured at the time a complaint is filed. *See, e.g., Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).

would still be satisfied." *Washington Nat'l Ins. Co. v. Obex Group LLC*, 18-cv-9693 (VB), 2019 WL 266681, at *4, 2019 U.S. Dist. LEXIS 9300, at *11 (S.D.N.Y. Jan. 18, 2019).

The district court thus had jurisdiction under 28 U.S.C. § 1332 and properly denied the respondents' motion to dismiss for lack of subject matter jurisdiction.

**III.    Validity of the Summonses Under Section 7 of the FAA**

We review the district court's interpretation of section 7 of the FAA *de novo. See Stolt-Nielsen*, 430 F.3d at 576–77.

The respondents argue that the arbitration summonses that WNIC sought to enforce in the district court were invalid because they did not comply with the requirements of section 7. Specifically, the respondents argue that the summonses sought "pre-hearing discovery" and "immaterial documents," which section 7 does not permit.

Section 7 provides in relevant part that:

> The arbitrators . . . may summon in writing any person to attend before them . . . as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.

9 U.S.C. § 7.

The summonses here accorded with section 7.  They required the respondents to appear at a hearing at the New York City offices of Proskauer Rose LLP,  and to bring with them the documents identified in instructions annexed to the summonses, including, *inter alia*, those that concerned or related to Beechwood, Platinum, or persons employed by or associated with those entities.  *See Stolt-Nielsen*, 430 F.3d at 578 (recognizing that section 7 authorizes subpoenas that call a non-party to appear in the physical presence of the arbitrator and to hand over documents at that time).  They did not require production of any documents "pre-hearing."

The respondents argue, however, that the summonses were a "subterfuge" by which WNIC sought impermissible pre-hearing discovery because WNIC had communicated to the respondents that they could comply with the summonses by producing the documents without appearing for a hearing and "made clear . . . that they had no interest in having OBEX or Katzenstein testify."  Resp. Br. at 37.  We are not persuaded.

A properly issued summons is not rendered invalid by a claimant's offer, a respondent's offer, or a joint agreement to produce documents without a hearing.

*See Stolt-Nielsen*, 430 F.3d at 578.  And we, like the district court, "will not prejudice petitioner for its sensible willingness to negotiate with respondents." *Washington Nat'l Ins. Co.*, 2019 WL 266681, at *6, 2019 U.S. Dist. LEXIS 9300, at *16.

Of greater concern is that, in advancing their argument, the respondents imply that the interest in avoiding testimony at a hearing was WNIC's alone.  But this is a gross mischaracterization in light of the facts reflected in the record.  It is the *respondents* – or the respondents' counsel who represented them before the district court and continues to do so on this appeal – who sought to produce the documents without appearing at a hearing.[5]  Joint App'x at 235.  We therefore are puzzled by this argument, which appears to us to approach the frivolous and "vexatious."  *See Gallop v. Cheney*, 642 F.3d 364, 370 (2d Cir. 2011).[6]

The respondents' argument that the summonses required them to produce immaterial documents is also unpersuasive.  At bottom, the respondents object to the *number* of responsive documents, rather than the *content* of those documents

---

[5] This is not the first time in this litigation that a court, the district court, has described the respondents' actions as "disingenuous."  *Washington Nat'l Ins. Co. v. Obex Group LLC*, 18-cv-9693 (VB), DE 45 at 4 (S.D.N.Y. Feb. 4, 2019).

[6] We are not pursuing the possibility of sanctions; they have not been requested by the petitioner.

or the instructions to which they respond. For example, the respondents contend that "[i]t is inconceivable that any significant portion" of the 38,510 documents responsive to the search term "Platinum" might be "'deemed material as evidence in the case.'" Resp. Br. at 41 (quoting 9 U.S.C. § 7). Section 7, however, contains no limit on the number of documents that may be deemed material.

To the extent that the respondents challenge the breadth of the instructions themselves, the respondents argue that "on their face, [the instructions] have no *necessary connection* to any *identifiable issue*." Resp. Br. at 42 (emphasis added). Irrespective of whether that is true, that is not the standard by which the instructions are to be measured. Section 7 requires only that any documents to be produced "may be deemed material as evidence in the case." 9 U.S.C. § 7. We see no basis for us to conclude that the summonses did not comply with that requirement.[7]

---

[7] One instruction in the summonses required the respondents to produce documents "concerning an actual or proposed Amended and Restated Limited Liability Company Agreement of Obex Group LLC." Joint App'x at 39. It is not clear if or how documents responsive to this instruction concern or relate to Beechwood, Platinum, or persons associated with those entities, or what their relevance to the arbitration would be. The respondents, however, did not challenge this instruction below and do not challenge it on appeal. We therefore do not consider it here.

### IV. Objections to the Summonses Under Rule 45

The respondents moved to quash the summonses in the district court on the grounds that they failed to comply with the requirements of Federal Rule of Civil Procedure 45 because, in the respondents' view, they were unduly burdensome, overbroad, duplicative of prior arbitration summonses, and required disclosure of privileged or protected matter. The district court declined to rule on the respondents' Rule 45 objections, stating that regardless of whether it had the power to do so, it did not have any such obligation. It noted too that courts in this Circuit generally defer those issues to the arbitrators who must "'construe the law the parties cite and evaluate the evidence the parties adduce.'" *Washington Nat'l Ins. Co.*, 2019 WL 266681, at *6, 2019 U.S. Dist. LEXIS 9300, at *16 (brackets omitted) (quoting *Shasha for Violet Shuker Shasha Living Tr. v. Malkin*, 14-cv-9989 (AT) (RWL), 2018 WL 3323818, at *2, 2018 U.S. Dist. LEXIS 112230, at *5–6 (S.D.N.Y. July 5, 2018)).

On appeal, the respondents argue that the district court erred and that, under section 7 of the FAA, it was obliged to rule on their objections to the summonses. We disagree.

The respondents' argument hinges on the assertion that Rule 45 – including, specifically, a district court's obligation to quash, on timely motion, any subpoena that "subjects a person to undue burden" or requires the "disclosure of privileged or other protected matter" – applies not only to subpoenas in civil litigation but also to arbitration summonses in enforcement proceedings under section 7 of the FAA. Fed. R. Civ. P. 45(d)(3)(A). They support this contention by arguing that section 7 requires "summonses to be issued and enforced '*in the same manner*' as federal court subpoenas." Resp. Br. at 46 (emphasis added) (quoting 9 U.S.C. § 7).

We review *de novo* the district court's interpretation of the FAA. *See Stolt-Nielsen*, 430 F.3d at 576–77. The respondents' argument here relies on the following language in section 7:

> [I]f any person or persons so summoned [by an arbitration panel] to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt **in the same manner** *provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.*

9 U.S.C. § 7 (emphasis added). But the respondents cite no authority – and we are aware of none – that interprets this text to impose Rule 45's obligations on district courts in proceedings to enforce arbitration summonses under section 7 of the FAA.[8] And the text does not support that interpretation. It indicates that summonses are to be enforced in the same manner that a subpoena is to be enforced – i.e., by compulsion or contempt. Rule 45 does not cover these processes.[9] Instead, it covers subpoenas generally – what they contain, how they are served, where they can require a person to go, and how a person must respond, among other things.

---

[8] In their brief, the respondents cite *COMSAT Corp. v. National Science Foundation*, 190 F. 3d 269, 275 (4th Cir. 1999), for the proposition that the district court should have determined whether the summonses complied with Rule 45. *COMSAT*, however, is inapposite. There the Fourth Circuit held only that the FAA generally does not authorize an arbitrator to subpoena third parties to provide prehearing discovery – an issue not before us given that the summonses here were not issued for purposes of prehearing discovery. The respondents, confusingly, also cite *Odfjell ASA v. Celanese AG*, 348 F. Supp. 2d 283 (S.D.N.Y. 2004), *aff'd sub nom Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005) – a case that not only does not support but contradicts their argument. In *Odfjell*, the district court noted that there was no reason for the court to address objections to the arbitration subpoenas "at least in the first instance, since one of the very reasons for making these subpoenas returnable before one or more members of the arbitration panel is so that the arbitrators can rule on preliminary issues of admissibility, privilege, and the like. Indeed, section 7 would make no sense if it provided the arbitrators with the power to subpoena witnesses and documents but did not provide them the power to determine related privilege issues." *Id.* at 287.

[9] The rule, however, notes the availability of each. *See* Fed. R. Civ. P. 45(d)(2)(B)(i), and 45(g).

The respondents' interpretation also does not square with the "'strong federal policy favoring arbitration as an alternative means of dispute resolution'" that is embedded in and furthered by the FAA. *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). Adopting the respondents' view would frustrate this policy by turning a district court into a "full-bore legal and evidentiary appeals" body, where arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (internal quotation marks omitted); *cf. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.").

The respondents argue also that a district court must consider their Rule 45 objections because it would be "fundamentally unfair," "a denial of due process," and "highly improper to have the merits of [their] objections decided by the same [arbitration panel] that issued the challenged summonses." Resp. Br. at 52. A

29

district court, however, does exactly that under Rule 45. It is the forum that "issues" a subpoena, and the one that decides objections to it and any evidence obtained pursuant to it. *See generally* Fed. R. Civ. P. 45. The same structure applies in arbitration. The panel is responsible for issuing summonses, hearing evidence, and ruling on objections.

We conclude that the district court properly declined to rule on the respondents' objections. We need not, of course, determine hypothetically whether district courts have the power to rule on such objections and we do not consider it here. We decide only that under section 7 of the FAA, the district court was not obliged to consider objections based on Rule 45. In so doing, we recognize the respondents' concern that under section 7, they may have no avenue, as non-parties, to obtain judicial review of the arbitration panel's determinations regarding the purportedly objectionable summonses. *See* Resp. Br. at 52–53. That issue, however, is not before us on appeal and we therefore do not consider it.

## V.    Venue for Enforcement

Finally, the respondents argue that the district court lacked authority to enforce the arbitration summonses because WNIC did not seek enforcement in the proper district.  Section 7 states in relevant part that:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district *in which such arbitrators, or a majority of them, are sitting* may compel the attendance of such person or persons before [the arbitrators], or punish [the person or persons] for contempt [of court].

9 U.S.C. § 7 (emphasis added).  The respondents contend that the arbitrators were not sitting in the Southern District of New York because they previously had held a hearing in the Eastern District of Pennsylvania and, the respondents contend, the statute does not permit arbitrators to sit in more than one district.

We agree with WNIC that "[t]he fact that the [arbitration panel] once also sat in the Eastern District of Pennsylvania, in connection with another summons, is of no moment."  Pet. Br. at 25.  The arbitration agreement here stipulated that any arbitration would take place in New York, New York, unless the parties agreed otherwise.  The original subpoenas duces tecum, with which the respondents allegedly did not fully comply, required them to appear at a hearing

at the offices of Sills Cummins & Gross in Manhattan and to bring with them

specified documents.  Upon discovering the respondents' alleged

noncompliance, the claimants asked the arbitration panel to issue summonses

requiring the respondents to appear at a hearing and to bring with them all

documents specified in the original subpoena and not previously produced.  The

arbitration panel did so and issued summonses commanding the respondents to

appear at a hearing before them at the offices of Proskauer Rose LLP in

Manhattan and to bring with them the documents at issue.  The hearing

proceeded as scheduled without the respondents attending at which time the

arbitration panel granted the claimants leave to seek enforcement in federal or

state court.  Thus, for purposes of these summonses, the arbitrators were sitting

in the Southern District of New York.

This determination does not violate the general principle that section 7

does not permit "nationwide service of process."  *Dynegy Midstream Servs., L.P. v.*

*Trammochem*, 451 F.3d 89, 91 (2d Cir. 2006).  Section 7 permits enforcement of

arbitration summonses in the district in which the arbitrators "*are sitting*."  9

U.S.C. § 7 (emphasis added).  That is what took place here.  Whether the

arbitrators were sitting in the Eastern District of Pennsylvania at another time or

in connection with a separate summons is not relevant to our inquiry. As a result, we conclude that the district court had authority to consider and grant WNIC's petition for enforcement.

## CONCLUSION

We have considered the respondents' remaining arguments on appeal and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.