FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 31 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MAINE COMMUNITY HEALTH OPTIONS,  Plaintiff-Appellant,  v.  ALBERTSONS COMPANIES, INC.,  Defendant-Appellee. | No.   20-35931  D.C. No. 1:19-cv-00448-JMM  OPINION |

Appeal from the United States District Court
for the District of Idaho
James Maxwell Moody, District Judge, Presiding

Argued and Submitted March 22, 2021
Pasadena, California

Before:  William A. Fletcher, Paul J. Watford, and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz;
Concurrence by Judge Watford

HURWITZ, Circuit Judge:

This case requires us to determine whether the amount-in-controversy requirement in 28 U.S.C. § 1332(a) is satisfied in an action under Section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7, seeking enforcement of a third-party subpoena issued by arbitrators.  Although the issue is of first impression in this

Circuit, we agree with the Second Circuit that the amount in controversy in a Section 7 enforcement action can be measured by either the benefit to the plaintiff or the detriment to the defendant that would result from enforcement of the subpoena. *See Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020) (defining the amount in controversy in a nonmonetary claim as "the value of the object of the litigation") (cleaned up); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (same). Because there is a good faith allegation that the benefit to the plaintiff of obtaining the subpoenaed information in this controversy exceeds $75,000, we reverse the district court's order dismissing for want of subject matter jurisdiction and remand for further proceedings concerning enforcement of the subpoena.

I

Maine Community Health Options ("Health Options"), an insurer, is engaged in arbitration with Navitus Health Solutions, LLC, a pharmacy benefits manager, over the latter's billings. In the arbitration, Health Options sought to obtain information from Navitus about billings by pharmacies within Navitus's network, including the Albertsons Companies, alleging the information would show overcharges. Navitus claimed not to have the information, and the arbitrators issued a subpoena directing Albertsons to provide the requested documents.

After Albertsons objected to the subpoena, Health Options filed this action in

federal district court, invoking Section 7, which authorizes district courts to enforce third-party arbitration subpoenas. But the FAA does not itself confer federal question jurisdiction, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983), so a party seeking to enforce a subpoena under Section 7 must establish a basis for subject matter jurisdiction, *see, e.g., Stolt-Nielsen, SA v. Celanese AG*, 430 F.3d 567, 572 (2d Cir. 2005); *Am. Fed'n of Television & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1007-08 (6th Cir. 1999); *Amgen, Inc. v. Kidney Ctr. of Del. Cnty., Ltd.*, 95 F.3d 562, 567 (7th Cir. 1996).[1] Health Options asserted diversity jurisdiction, claiming that the parties to the enforcement action (Health Options and Albertsons) were citizens of different states and that the amount in controversy exceeded $75,000.

After allowing supplemental filings, the district court found that Health Options failed to show the amount in controversy exceeded $75,000 and dismissed the action for want of subject matter jurisdiction. Because it is undisputed that there is diversity of citizenship, the only issue raised by Health Options on appeal is whether the amount-in-controversy requirement was satisfied. Reviewing de novo, *see Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 (9th Cir. 2019), we

---

[1] We do not today address an "embedded proceeding," in which the district court exercised original jurisdiction in compelling the parties to arbitrate. *See Amgen*, 95 F.3d at 567 (stating that "no difficulties with subject matter jurisdiction arise" with respect to a Section 7 enforcement action in those circumstances).

3

find that it was.

II

In a diversity case originally filed in federal court, the "sum claimed" in the complaint "controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Wash. Nat'l Ins.*, 958 F.3d at 135 (cleaned up); *see Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (same). When a complaint seeks nonmonetary relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt*, 432 U.S. at 347. The "party asserting federal jurisdiction bears the burden of proving the case is properly in federal court." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001).

When determining the amount in controversy in a non-class-action setting, this Court applies the "either viewpoint" rule. *See Ridder Bros. Inc., v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) ("The value of the thing sought to be accomplished by the action may relate to either or any party to the action.") (cleaned up). In suits not seeking monetary relief, "if the value of the thing to be accomplished [is] equal to the dollar minimum of the jurisdictional amount requirement to anyone concerned in the action, then jurisdiction [is] satisfied." *Id.* at 398; *see also Hunt*, 432 U.S. at 347 ("[T]he amount in controversy is measured by the value of the object of the litigation."). Albertsons says that its anticipated cost of compliance with the

4

subpoena is approximately $1,400, and Heath Options does not seriously dispute that estimate.[2] Thus, if the jurisdictional amount requirement is to be satisfied, it must be from Health Options' viewpoint.

In considering the value to the plaintiff of obtaining compliance with a third-party arbitration subpoena, the Second Circuit found it persuasive that "the summonses . . . are relevant to whether [petitioner] is entitled to all or part of" the arbitral award. *Wash. Nat'l Ins.,* 958 F.3d at 135. Under that approach, the amount in controversy can be established by a "good faith" allegation of the value of the subpoenaed information to the plaintiff in the underlying arbitration dispute. *See id.* We agree. We therefore focus on how enforcement of the subpoena will affect the claims and the relief available to Health Options in the arbitration.

Health Options does not allege that the information subpoenaed from Albertsons will lead to the recovery of the entire $17 million it seeks against Navitus in the arbitration. Nor does it even claim that it will lead to the recovery of the $1.7 million in billings made by Albertsons to Navitus on behalf of Health Options' insureds. But Health Options does plausibly allege that the subpoenaed information will likely affect more than $75,000 of its claims against Navitus. The jurisdictional

---

[2] Health Options now argues on appeal that Albertsons spent far more than $1,400 resisting this subpoena. But it is well settled that the jurisdictional amount is established "from the face of the pleadings," *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 375 (9th Cir 1997), "at the time a complaint is filed," *Wash. Nat'l Ins.*, 958 F.3d at 135 n.4.

amount requirement is but 4 percent of the total relevant billings from Albertsons to Navitus. In its supplemental pleading, Health Options provided an expert declaration that the subpoenaed information will likely document more than $75,000 in Health Options' alleged damages. *See id.* (finding that even if the subpoenaed information supports only a "small fraction of the award sought," that value would exceed the jurisdictional amount) (cleaned up). Given Health Options' plausible good faith allegations, it does not "appear *to a legal certainty* that the claim is really for less than the jurisdictional amount." *Id.* (cleaned up).[3]

## III

The district court's order of dismissal for want of subject matter jurisdiction is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[3] Because the amount in controversy in the federal action between Health Options and Albertsons is sufficient, we need not today consider whether federal jurisdiction in the Section 7 enforcement action could be established by determining that there is federal jurisdiction to compel arbitration in the underlying dispute.

*Maine Community Health Options v. Albertsons Companies, Inc.*, No. 20-35931

WATFORD, Circuit Judge, concurring:

I agree that the district court erred in holding that it lacked subject-matter jurisdiction to enforce the subpoena at issue here, but I arrive at that conclusion by a different path.

Maine Community Health Options filed this motion under § 7 of the Federal Arbitration Act (FAA), 9 U.S.C. § 7, to enforce a third-party subpoena issued by a panel of arbitrators. The FAA itself does not provide a basis for subject-matter jurisdiction in federal court. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n.32 (1983). So, to invoke the district court's jurisdiction, Maine Community Health Options had to establish an independent basis for jurisdiction (diversity, federal-question, or admiralty). My colleagues analyze the motion as though it were a freestanding lawsuit brought by Maine Community Health Options against Albertsons, and they ask whether there is a basis for exercising subject-matter jurisdiction over the dispute between those two parties. In my view, that analysis focuses on the wrong dispute. The relevant controversy under the FAA is the one between the parties to the underlying arbitration proceeding: Maine Community Health Options and Navitus Health Solutions, LLC.

Sections 3 and 4 of the FAA are key to understanding why that is so, as they provide the jurisdictional anchor for all of the provisions that follow. Section 3 authorizes a district court to stay proceedings in an action pending before it if the action involves a controversy that the parties have agreed to resolve through arbitration. 9 U.S.C. § 3. The court has the power to grant such relief, of course, only if it has subject-matter jurisdiction over the controversy in the first place. Section 4 likewise focuses on the court's jurisdiction over the underlying controversy between the parties who have agreed to arbitrate. It states that a district court may grant a petition to compel arbitration if, absent the parties' agreement, the court "would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." § 4; *see also Vaden v. Discover Bank*, 556 U.S. 49, 62–63 (2009) (holding that federal courts may "look through" a § 4 petition to determine whether "the parties' underlying substantive controversy" gives rise to subject-matter jurisdiction). I read these two provisions as defining the range of controversies that Congress deemed important enough, from a federalism standpoint, to warrant federal courts interceding to ensure that agreements to arbitrate such controversies "are enforced according to their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989).

The rest of the provisions of the FAA authorize district courts to take actions necessary to ensure that the parties' underlying controversy is successfully resolved through arbitration. Section 5 authorizes the court to appoint the arbitrators who will decide the dispute if for some reason the parties fail to do so themselves. 9 U.S.C. § 5. Section 7, the provision at issue here, authorizes district courts to enforce subpoenas compelling witnesses to testify at the arbitration hearing and to bring with them records or documents "which may be deemed material as evidence in the case." Section 8 authorizes district courts, in cases in which subject-matter jurisdiction is founded upon admiralty, to assume *in rem* jurisdiction over a vessel or other property that has been seized and to supervise enforcement of any resulting arbitration award against the *res*. Sections 9, 10, and 11 authorize district courts to supervise entry of judgment on any resulting arbitration award by entering an order to confirm, vacate, modify, or correct the award.

Considering the structure of the FAA as a whole, it seems evident to me that Congress envisioned a § 7 petition not as a freestanding lawsuit, but as an adjunct to the "underlying substantive controversy" between the parties in arbitration. *Vaden*, 556 U.S. at 62. Thus, if the district court would have been able to exercise subject-matter jurisdiction over *that* controversy, it necessarily has jurisdiction to enforce a subpoena issued in connection with the ongoing arbitration proceeding.

And, by the same token, if the district court would *not* have been able to exercise subject-matter jurisdiction over the underlying controversy, then it lacks jurisdiction to enforce a subpoena arising out of the arbitration, regardless of any arguments that could be made for the existence of diversity jurisdiction with respect to the parties to the subpoena enforcement proceeding itself. The enforcement of an arbitration subpoena under § 7 "brings before the court one aspect of enforcing the parties' agreement to arbitrate—not the right to arbitrate itself, but the enjoyment of a key procedural attribute of the arbitration the parties bargained for." George A. Bermann et al., *A Model Federal Arbitration Summons to Testify and Present Documentary Evidence at an Arbitration Hearing*, 26 Am. Rev. Int'l Arb. 157, 173 (2015). Looking through the § 7 petition to the underlying substantive controversy to determine subject-matter jurisdiction, as with § 4 petitions, follows naturally.

Analyzing subject-matter jurisdiction in § 7 enforcement proceedings in this fashion avoids two anomalies that arise under the majority's approach. First, assume that the parties' underlying substantive controversy provides a basis for subject-matter jurisdiction in federal court and that the district court either grants a motion to stay proceedings under § 3 or grants a motion to compel arbitration under § 4. Most courts appear to agree that, in these circumstances, if one of the parties in arbitration subsequently files a § 7 petition to compel enforcement of a

subpoena, the district court has jurisdiction to act on the petition, without any need to engage in a fresh jurisdictional analysis focused solely on the parties to the § 7 enforcement proceeding. *See, e.g.*, *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 572–73 (2d Cir. 2005); *Amgen, Inc. v. Kidney Center of Delaware County, Ltd.*, 95 F.3d 562, 567 (7th Cir. 1996). If that view is correct, though, it must be because the § 7 enforcement proceeding is simply an adjunct to the underlying controversy between the parties in arbitration. Why should the nature of the jurisdictional analysis change if the § 7 petition is the first matter filed in federal court related to the underlying controversy? From a federalism standpoint, the interest in having federal courts supervise the arbitration and ensure that it is successfully completed is no different in either scenario.

Second, and conversely, assume that the district court would *not* have had subject-matter jurisdiction over the underlying substantive controversy. Thus, the court would not have been able to compel arbitration under § 4, would not have been able to appoint arbitrators under § 5, and ultimately won't be able to supervise entry of judgment on any resulting arbitration award under §§ 9–11. Assume further that one of the parties in arbitration files a § 7 petition to enforce a subpoena, the parties to this enforcement proceeding are of diverse citizenship, and a credible argument can be made that more than $75,000 could change hands depending on whether the subpoena is enforced or not. Why would Congress have

wanted federal courts to intervene to enforce a subpoena issued in an arbitration proceeding involving a controversy that itself is not important enough, from a federalism standpoint, to warrant federal-court oversight? And to do so when the federal courts will not (and cannot) have any other involvement in supervising the conduct of the arbitration? It seems far more likely that Congress intended parties seeking to enforce arbitration subpoenas in such circumstances to pursue whatever remedies are available to them in state court, where all other action related to the arbitration proceeding must occur anyway.

Grounding the jurisdictional analysis on the underlying controversy between the parties in arbitration has the added virtue of avoiding the tortured amount-in-controversy inquiry that federal courts will otherwise be forced to make. We have an established body of case law to help us determine whether the amount-in-controversy requirement has been met when one party is suing another on actual claims for relief. We have very little case law to guide us in determining whether enforcement of an arbitration subpoena against a third party will enable someone to recover more than $75,000 in an arbitration dispute with a different party. *See* Bermann et al., *supra*, 26 Am. Rev. Int'l Arb. at 172–73. From the standpoint of administrative feasibility, it is more sensible to ground the jurisdictional analysis on whether the district court would have been able to exercise subject-matter

jurisdiction over the underlying controversy, even in first-in-time § 7 enforcement proceedings like this one.

In this case, the district court plainly would have been able to exercise subject-matter jurisdiction over the underlying controversy between Maine Community Health Options and Navitus. It is undisputed that the parties are of diverse citizenship and that Maine Community Health Options has alleged in good faith that the underlying controversy involves a potential recovery in excess of $17 million. I therefore agree with my colleagues that the district court erred by dismissing this § 7 enforcement proceeding for lack of subject-matter jurisdiction. But I would reach that result by the path described above.