**23-684-cv (L)**
*Windward Bora v. Browne*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2023

ARGUED: MARCH 5, 2024
DECIDED: JULY 26, 2024

Docket Nos. 23-684-cv, 23-748-cv

WINDWARD BORA LLC,
*Plaintiff–Appellant–Cross-Appellee*,

*v.*

CONSTANCE R. BROWNE and ROYSTON D. BROWNE,
*Defendants–Appellees–Cross-Appellants*.

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: WALKER, NARDINI, AND MENASHI, *Circuit Judges*.

————

Plaintiff–Appellant Windward Bora LLC ("Windward") purchased a junior promissory note signed by Defendants–Appellees Constance and Royston Browne (the "Brownes") that was originally secured by a junior mortgage on real property. Prior to this purchase,

Windward's predecessor-in-interest brought an action on the junior mortgage and obtained a final judgment of foreclosure. Without obtaining leave of the court in which that action was brought, Windward filed the underlying diversity action against the Brownes, seeking to recover on the promissory note that had been secured by the junior mortgage.

Both parties moved for summary judgment. The district court (Moses, *M.J.*) granted the Brownes' motion and denied Windward's. It first determined that there was diversity jurisdiction by comparing the national citizenship of the Brownes with that of Windward's sole member, a U.S. lawful permanent resident, concluding that the state domiciles of the parties were irrelevant. It then held that the suit was precluded by the pertinent New York election-of-remedies statute because Windward failed to seek leave prior to proceeding at law (by suing on the note) when its predecessor-in-interest had already proceeded in equity (by suing on the mortgage) to recover the same debt. The district court found that no special circumstances existed to excuse Windward's failure.

We agree with the district court's conclusion that diversity jurisdiction is present in this case but disagree that the parties' state domiciles were irrelevant to making that determination: such jurisdiction would not exist had Windward's permanent resident member been domiciled in the same state as the Brownes when the complaint was filed. Our analysis resolves a divide between the district courts in this circuit, clarifying that there is no diversity jurisdiction in a suit between U.S. citizens and unincorporated associations with lawful permanent resident members if such jurisdiction would not exist in a suit between the same U.S. citizens

2

and those permanent resident members as individuals.

We also conclude that the district court did not err in granting summary judgment for the Brownes under New York's election-of-remedies statute and therefore **AFFIRM**.

————

SETH D. WEINBERG, Syosset, NY, *for Plaintiff–Appellant–Cross-Appellee Windward Bora LLC.*

JOSEPH A. ALTMAN, Fleetwood, NY, *for Defendants–Appellees–Cross-Appellants Constance R. Browne and Royston D. Browne.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff–Appellant Windward Bora LLC ("Windward") purchased a junior promissory note signed by Defendant–Appellees Constance and Royston Browne (the "Brownes") that was originally secured by a junior mortgage on real property. Prior to this purchase, Windward's predecessor-in-interest brought an action on the junior mortgage and obtained a final judgment of foreclosure. Without obtaining leave of the court in which that action was brought, Windward filed the underlying diversity action against the Brownes, seeking to recover on the promissory note that had been secured by the junior mortgage.

Both parties moved for summary judgment. The district court (Moses, *M.J.*) granted the Brownes' motion and denied Windward's. It first determined that there was diversity jurisdiction by comparing

3

the national citizenship of the Brownes with that of Windward's sole member, a U.S. lawful permanent resident, concluding that the state domiciles of the parties were irrelevant. It then held that the suit was precluded by the pertinent New York election-of-remedies statute because Windward failed to seek leave prior to proceeding at law (by suing on the note) when its predecessor-in-interest had already proceeded in equity (by suing on the mortgage) to recover the same debt. The district court found that no special circumstances existed to excuse Windward's failure.

We agree with the district court's conclusion that diversity jurisdiction is present in this case but disagree that the parties' state domiciles were irrelevant to making that determination: such jurisdiction would not exist had Windward's permanent resident member been domiciled in the same state as the Brownes when the complaint was filed. Our analysis resolves a divide between the district courts in this circuit, clarifying that there is no diversity jurisdiction in a suit between U.S. citizens and unincorporated associations with lawful permanent resident members if such jurisdiction would not exist in a suit between the same U.S. citizens and those permanent resident members as individuals.

We also conclude that the district court did not err in granting summary judgment for the Brownes under New York's election-of-remedies statute and therefore **AFFIRM**.

## BACKGROUND

In 2005, Constance and Royston Browne purchased a property in Bronx County, New York (the "Property"). To make that purchase, they obtained a loan in the amount of $536,000 from First Estate

4

Funding Corp ("FEFC") upon executing a promissory note in favor of FEFC (the "Senior Note") that was secured by a mortgage on the Property (the "Senior Mortgage"). The Brownes then obtained a second loan in the amount of $100,500 from FEFC by executing another promissory note (the "Junior Note") secured by a second mortgage on the Property (the "Junior Mortgage"). Both of these notes and mortgages subsequently passed hands many times.

The Brownes stopped making payments and thus defaulted on both mortgages in 2008. In 2009, Aurora Loan Services, LLC ("Aurora"), which then held the Senior Mortgage and Note, brought a foreclosure action on the mortgage against the Property in New York state court (the "State Action").[1] The Brownes and Mortgage Electronic Registration Systems, Inc. ("MERS"), which then held the Junior Mortgage and Note, were named as defendants in the action but failed to answer.

In 2016, while the State Action was ongoing, the newest acquirer of the Junior Mortgage and Note, Gustavia Home, LLC ("Gustavia"), filed a foreclosure action on the mortgage against the Property in federal court (the "Federal Action").[2] The Brownes and the newest acquirer of the Senior Mortgage and Note, Nationstar Mortgage LLC ("Nationstar"), were named as defendants in the action. Only Nationstar appeared and answered.

---

[1] *Aurora Loan Servs., LLC v. Browne*, No. 381143/2009 (N.Y. Sup. Ct. Bronx Cnty.).

[2] *Gustavia Home, LLC v. Brown*, No. 16-CV-9318 (JMF) (S.D.N.Y.). Like Windward Bora, as discussed *infra*, Gustavia is a Delaware LLC with Yonel Devico—who, at the time that the Federal Action was filed, was a citizen of Morocco and a lawful permanent resident in the United States—as its sole member.

In 2017, a judgment of foreclosure and sale was issued in the State Action, which extinguished the rights of the Brownes and MERS (and their successors) in the Property. The state court ordered that the Property be sold at public auction to satisfy the amount due on the Senior Note and that any surplus monies be deposited with the Bronx County Clerk. Gustavia, as MERS' successor, moved to intervene in the State Action to enjoin the foreclosure sale, but its motion was dismissed as untimely.

In March 2018, Nationstar moved to dismiss Gustavia's federal action for lack of subject-matter jurisdiction, invoking the *Rooker-Feldman* doctrine, as well as arguing that the federal action was barred by *res judicata* and collateral estoppel. Less than a month later, Nationstar and Gustavia stipulated to dismiss with prejudice Gustavia's claims against Nationstar in the Federal Action (the "Nationstar Agreement"). The precise terms of this stipulation—including any potential payment to Gustavia—are not in the record. In May 2018, Gustavia obtained a default judgment in the federal action against the Brownes, which directed that the Property be sold at public action to satisfy the amount due on the Junior Note.

In 2019, the Property was sold at public auction at a price of $1,293,832.88 pursuant only to the State Action. The record does not reflect whether any surplus monies remained from the auction proceeds after the Senior Note was paid off.

On June 19, 2020, Windward Bora LLC, the present holder of the Junior Note,[3] filed this federal action, seeking recovery under that

---

[3] Windward bought the Junior Note from Gustavia for $100 on November 1, 2019.

Note.  Windward invoked the district court's diversity jurisdiction under 28 U.S.C. § 1332.  It is undisputed that at the time of filing, the Brownes were U.S. citizens domiciled in New York and Windward's sole member, Yonel Devico, was a citizen of Morocco and a U.S. lawful permanent resident.[4]  Devico's domicile, however, is disputed. Windward alleged in its complaint that Devico was a Florida domiciliary; it also submitted a picture of Devico's Florida driver's license, issued in April 2019, and an affidavit sworn by Devico in April 2021 in a different legal case that stated he resided in Florida.[5] The Brownes contended that Devico was domiciled in New York when the complaint was filed, pointing to two documents as evidence: a satisfaction of mortgage signed by Devico in January 2018 that stated he resided in New York and a court summons dated October 2020 indicating that Devico owned a New York condominium at that time.

In 2022, after discovery closed, the parties filed cross-motions for summary judgment.  The Brownes made two key arguments relevant to this appeal.  First, they asserted that the district court

---

[4] After Windward filed the complaint, Devico became a naturalized U.S. citizen. This is irrelevant for jurisdictional purposes, however, because "[d]iversity is measured as of the time the action is brought."  *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (per curiam).

[5] Domicile and residence are not synonymous, "although the two typically coincide."  13E Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 3612 (3d ed. June 2024 Update).  An individual's state domicile is "more than [her] residence," because it requires both residence in a state and an intent to remain there.  *Id.*; *see Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." (internal quotation marks omitted)).

lacked diversity jurisdiction because both they and Devico were domiciled in New York and, as a limited liability company ("LLC"), Windward took on Devico's state domicile for jurisdictional purposes. Second, they argued that, even if the district court had jurisdiction, New York's election-of-remedies statute barred a suit on the Junior Note because Windward's predecessor, Gustavia, had already pursued and obtained a judgment of foreclosure on the Junior Mortgage in the previous federal action and Windward had not sought leave of the court before filing its suit.

The district court disagreed with the Brownes that Devico was domiciled in New York rather than Florida, concluding that the Brownes' documents had not "raise[d] a genuine dispute of fact as to Devico's domicile." Sp. App'x 3 n.3. But the district court also found the question of Devico's state domicile "irrelevant" to whether it had diversity jurisdiction. *Id.* Instead, it concluded that only Devico's national citizenship was relevant for jurisdictional purposes: because Devico was a Moroccan citizen at the time of filing, Windward was also a Moroccan citizen—and thus diverse from the Brownes regardless of Devico's state domicile.

After determining that it had jurisdiction, the district court granted summary judgment in favor of the Brownes and dismissed the complaint. Although it found that Windward had otherwise established a *prima facie* case to enforce the Junior Note, it agreed with the Brownes that New York's election-of-remedies law—specifically, section 1301(3) of the New York Real Property Actions and Proceedings Law ("RPAPL")—barred Windward's suit. This appeal and cross-appeal followed.

8

**DISCUSSION**

Windward argues on appeal that the district court erred in holding that its claim was barred by RPAPL § 1301(3). The Brownes assert that, although the district court correctly dismissed the case under RPAPL § 1301(3), it erred in rejecting their other arguments: that there was no diversity jurisdiction, that Windward lacked standing to sue on the Junior Note, and that the case was time-barred.

Addressing the Brownes' threshold arguments, we agree with the district court that the parties are diverse. But, unlike the district court, we conclude that diversity here hinged on the parties' state domiciles. We also agree, for the reasons previously explained by the district court, that Windward has standing and that the case is not time-barred. *See* Sp. App'x 15-16, 20-22. Finally, we hold that the district court properly dismissed the complaint under RPAPL § 1301(3) on the ground that no special circumstances excused Windward from its obligation to request leave to sue on the Junior Note.

**I.      Diversity Jurisdiction**

We first address whether diversity jurisdiction is present in this case, which will determine if we have the subject matter jurisdiction necessary to hear it.

"[S]ubject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power . . . ." *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990). The sole basis for subject matter jurisdiction proffered in this case is diversity jurisdiction under 28 U.S.C. § 1332 (the "diversity statute"). When

reviewing a district court's determination of diversity jurisdiction "we review factual findings for clear error and legal conclusions *de novo*." *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020) (internal quotation marks omitted).

Two requirements must be met for diversity jurisdiction: (1) the amount in controversy in the case must exceed $75,000 and (2) the case must be between "citizens of different States" or "citizens of a State and citizens or subjects of a foreign state," such that there is complete diversity of citizenship between every plaintiff and every defendant. 28 U.S.C. § 1332(a)(1) & (2); *see Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 117–18 (2d Cir. 2014). While the first requirement is easily met in this case, the second compels us to address a question over which district courts in this circuit are divided: whether the state domicile(s) of an LLC's lawful permanent resident member(s) are relevant to determining diversity jurisdiction. *Compare Windward Bora, LLC v. Barrie*, No. 19-CV-7272(EK)(MMH), 2022 WL 4485149, at *3 (E.D.N.Y. Sept. 27, 2022) (state domiciles irrelevant)*, with N.Y. Metro. Reg'l Ctr., L.P. II v. Mammoet USA Holding, Inc.*, 552 F. Supp. 3d 451, 458–59 (S.D.N.Y. 2021) (state domiciles relevant). After analyzing the rules of diversity jurisdiction as they relate to both lawful permanent residents and to LLCs, we conclude that the state domicile(s) of an LLC's lawful permanent resident member(s) are relevant to the diversity determination.

### A. Diversity Rules for Lawful Permanent Residents

Appreciating the district courts' division on this issue requires us to examine how the diversity statute has historically applied to lawful permanent residents. Prior to 1988, such residents were

10

treated the same as non-resident foreign citizens for jurisdictional purposes: there was jurisdiction over suits between a United States citizen and a permanent resident because the diversity statute granted jurisdiction over controversies between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2); *Singh v. Daimler-Benz AG*, 9 F.3d 303, 306 (3d Cir. 1993) (before 1988, "permanent resident[s] . . . were considered citizens or subjects of a foreign state" (internal quotation marks omitted)). This meant that a federal court would have diversity jurisdiction in a case between a U.S. citizen and a permanent resident even when both were domiciled in the same state. *See H.K. Huilin Int'l Trade Co. v. Kevin Multiline Polymer Inc.*, 907 F. Supp. 2d 284, 286 (E.D.N.Y. 2012).

In 1988, Congress amended section 1332 to prevent this outcome,[6] adding language that stated that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Pub. L. No. 100-702, § 203(a), 102 Stat. 4642, 4646 (1988) (the "1988 Amendment"). Prior to this amendment, a permanent resident would not have been considered a

---

[6] There is a general consensus that the 1988 Amendment was motivated, at least in part, by a desire "to preclude federal jurisdiction in an action in which a [permanent] resident alien is sued by a citizen of the same state." *H.K. Huilin*, 907 F. Supp. 2d at 286 (internal quotation marks omitted); *see also Singh*, 9 F.3d at 309 ("The Senate's consideration of the [1988 Amendment] focused on the incongruity of permitting a permanent resident alien living next door to a citizen to invoke federal jurisdiction for a dispute between them while denying a citizen living across the street the same privilege." (citing 134 Cong. Rec. 31,055 (1988)); *Saadeh v. Farouki*, 107 F.3d 52, 59–60 (D.C. Cir. 1997) (discussing Congress's aim of reducing the federal diversity caseload, in part by "eliminat[ing] diversity jurisdiction in cases between a citizen and an alien permanently residing in the same state" (citing H.R. REP. No. 100–889, at 44 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6005)).

*citizen* of the state he was domiciled in because state citizenship required both U.S. citizenship and state domicile: thus, a U.S. citizen living in New York was a New York citizen but a Moroccan citizen living in New York was not. *See Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 383 (1904).

Treating permanent residents as state citizens caused new problems, however. Although the 1988 Amendment aimed to constrain diversity jurisdiction, it could also be read as *expanding* jurisdiction to controversies between permanent residents and non-resident foreign citizens. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam). Federal circuit courts differed on how to interpret the amendment—and whether such an expansion was even constitutional. *Compare Singh*, 9 F.3d at 306–12, *with Saadeh v. Farouki*, 107 F.3d 52, 57-61 (D.C. Cir. 1997); *see also* U.S. Const. art. III, § 2, cl. 1 (extending the judicial power of the United States to controversies "between Citizens of different States . . . and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects").

Congress subsequently amended section 1332 again in 2011 to remove the language of the 1988 Amendment and to add language to section 1332(a)(2)—the provision that provided for jurisdiction between "citizens of a State and citizens or subjects of a foreign state." *See* Pub. L. No. 112-63, § 101, 125 Stat. 758, 758 (2011) (the "2011 Amendment"). This amendment explicitly denied federal jurisdiction over "an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State" (the "Exception"). *Id.* Thus, while permanent residents were no

longer deemed to have state *citizenship* as they had been under the 1988 Amendment, their state *domiciles* remained relevant to diversity jurisdiction.

This change served the same function as the 1988 Amendment—preventing diversity jurisdiction in cases between a U.S. citizen and a permanent resident domiciled in the same state—while avoiding the "possibly anomalous results" the 1988 Amendment might have allowed when a permanent resident attempted to bring a case against a non-resident foreign citizen. H.R. Rep. No. 112-10, at *7 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576 (Leg. Hist.); *see id.* (noting that the 2011 Amendment will "achieve the goal of modestly restricting jurisdiction, which Congress sought to accomplish when it first enacted the [1988 Amendment]").

## B. Diversity Rules for Limited Liability Companies with Lawful Permanent Resident Members

For the purpose of diversity jurisdiction, an LLC is treated as an unincorporated association. *Compare Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 615 (2d Cir. 2019), *with Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987). Although Congress has never explicitly laid out jurisdictional rules for unincorporated entities, the Supreme Court has held that diversity jurisdiction in a suit by or against such an "entity depends on the citizenship of all its members." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (cleaned up); *see also Platinum-Montaur Life Scis.*, 943 F.3d at 615. Since under the current version of section 1332(a)(2) a lawful permanent resident is no

13

longer "deemed a citizen of the State in which [he] is domiciled"[7] but is instead a "citizen[ ] or subject[ ] of a foreign state,"[8] some district court judges (including the one in this case) have concluded that an LLC adopts the national citizenship(s) of its lawful permanent resident member(s). *See* Sp. App'x 3–4 n.3; *Barrie*, 2022 WL 4485149, at *3; *cf. Tagger*, 951 F.3d at 126.

This is a sensible deduction, but it is not where the inquiry should end. Instead, we must additionally consider whether the state domiciles of an LLC's permanent resident members should *also* be attributed to the LLC, such that the 2011 Amendment's Exception would apply in suits between U.S. citizens and LLCs with permanent resident members domiciled in the same state as those U.S. citizens. Put in different terms: even if an LLC takes on the national citizenships of its permanent resident members, must we nonetheless consider the state domiciles of those members? We conclude that the answer is yes, for two reasons.

First, an unincorporated association, unlike a corporation, does not possess legal personhood or identity separate from its members. *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998); *see also* 13F Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 3630 (3d ed. June 2024 Update) (noting that the artificial personhood of a corporation—which allows it to hold citizenship that differs from the citizenships of its members for the purpose of diversity jurisdiction—is a "[legal] fiction" that "is

---

[7] 1988 Amendment.

[8] 2011 Amendment.

14

not applied to unincorporated associations"). The Supreme Court has therefore established a jurisdictional "rule linking unincorporated entities with their members." *Americold Realty*, 577 U.S. at 381 (internal quotation marks omitted). It follows from this rule that, if a suit between a U.S. citizen and a permanent resident would lack diversity jurisdiction because they are domiciled in the same state, there should also be no diversity jurisdiction when the suit is instead between that U.S. citizen and an LLC of which the same permanent resident is a member. We see no reason why an LLC should adopt *only* its permanent resident members' national citizenships but not their state domiciles when those permanent resident members themselves are jurisdictionally affected by *both* their national citizenships and their state domiciles.

Second, the history of congressional amendments to section 1332 shows a clear intent to limit federal diversity jurisdiction. Though some litigants have argued that the removal of the 1988 Amendment's language evinced congressional intent to allow suits between an LLC and a U.S. citizen even where the same suit could not exist between that LLC's permanent resident members and the same U.S. citizen,[9] that theory "reads far too much into the 2011 [A]mendment." *See Mammoet USA*, 552 F. Supp. 3d at 459–60. The

---

[9] Under the 1988 Amendment, there would clearly be no diversity jurisdiction in a suit between a U.S. citizen and an LLC with a permanent resident member domiciled in the same state as the U.S. citizen: the permanent resident would have been "deemed *a citizen* of the State in which [he was] domiciled" (emphasis added) and the LLC would have adopted that state citizenship, destroying diversity between the LLC and the U.S. citizen domiciled in that state. 1988 Amendment. Therefore, litigants have argued that by removing that amendment's language in the 2011 Amendment, Congress intended for diversity jurisdiction to exist in that circumstance. *See Mammoet USA*, 552 F. Supp. 3d at 459–60.

1988 Amendment aimed to curtail jurisdiction between U.S. citizens and permanent residents domiciled in the same state. When the language of that amendment was construed by some courts as opening up a new avenue of jurisdiction—between permanent residents and non-resident foreign citizens—the statute was amended again to foreclose that possibility. It would be incongruous with this statutory history if, without clear signs from the text or legislative record, we now held that the 2011 Amendment unlocked a different door to jurisdiction. *Cf. BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (noting that "the record of *enacted* changes Congress made to the relevant statutory text over time" is "the sort of textual evidence everyone agrees can sometimes shed light on meaning").

Some district courts have pointed to our decisions in *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012), and *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir. 1998), for the proposition that the domiciles of members of an unincorporated association are irrelevant to diversity jurisdiction. *See Barrie*, 2022 WL 4485149 at *3. These cases do not stand for that proposition. In *Bayerische Landesbank*, the defendant LLC's sole member was another LLC whose individual members were all U.S. citizens and residents, which ensured diversity from the plaintiff, a German corporation. *See Bayerische Landesbank*, 692 F.3d at 48–49. And in *Advani*, we determined that diversity was lacking because the plaintiff, a U.S. corporation, failed to allege that the members of the defendant unincorporated associations were diverse. *Advani*, 140 F.3d at 160–61. In neither case did we hold that an unincorporated association could, consistent with the diversity statute, sue a citizen

16

of the same state in which its members were domiciled as lawful permanent residents.

In sum, we apply a simple rule when determining whether there is diversity jurisdiction over a case involving an unincorporated association with lawful permanent resident members: if there would be no jurisdiction if the case involved only an unincorporated association's permanent resident members but not the association itself, there can be no jurisdiction in the case involving the unincorporated association.

Applying this rule to the present case, we find that diversity jurisdiction exists. Although the district court erroneously concluded that Devico's state of domicile was "irrelevant to . . . diversity jurisdiction," it nonetheless determined that Devico was domiciled in Florida when the action was filed. *See* Sp. App'x 3–4, n.3. We find no clear error in the district court's factual finding as to Devico's domicile. *See Washington Nat'l Ins. Co.*, 958 F.3d at 133. Because there would be diversity jurisdiction in a case between the Brownes, who are U.S. citizens domiciled in New York, and Devico, who was a Moroccan citizen and lawful permanent resident domiciled in Florida, such jurisdiction also exists in a case between the Brownes and Windward, an LLC with Devico as its sole member.

## II.    RPAPL § 1301(3)

Now that we have confirmed that there is diversity jurisdiction over this case, we turn to Windward's argument that the district court erred in dismissing the complaint under New York's pertinent election-of-remedies statute, RPAPL § 1301(3). This provision compels a holder of mortgage debt (a "mortgagee") who seeks to

recover that debt to choose between a proceeding in equity (by suing on the mortgage) or at law (by suing on the note). *Gizzi v. Hall*, 767 N.Y.S.2d 469, 471 (3d Dep't 2003) (mortgagee "must only elect one of these alternate remedies"). If the mortgagee sues in equity and obtains a final judgment of foreclosure—as Windward's predecessor-in-interest did here—"no other action shall be commenced or maintained to recover any part of the mortgage debt . . . without leave of the court in which the former action was brought." RPAPL § 1301(3).

Because Windward did not seek such leave before suing on the Junior Note, we agree with the district court that the complaint must be dismissed unless "special circumstances [a]re shown which manifestly require[]" that Windward be allowed to "institute a separate action on the [same mortgage] debt."[10] *Rainbow Venture Assocs., L.P. v. Parc Vendome Assocs., Ltd.*, 633 N.Y.S.2d 478, 479 (1st Dep't 1995) (internal quotation marks omitted). Determining whether such circumstances exist is "a matter of discretion" "regulated by consideration of equitable principles on a case by case basis." *Resol. Tr. Corp. v. J.I. Sopher & Co.*, 108 F.3d 329, 1997 WL 100879, at *2 (2d Cir. 1997) (unpublished) (internal quotation marks omitted).

---

[10] The Brownes argue on appeal that the New York Foreclosure Abuse Prevention Act (L 2022, ch 821) ("FAPA"), which amended RPAPL § 1301, applies retroactively to this case and "removes [this] judicial discretion," making dismissal mandatory "for failure to comply with RPAPL § 1301." Appellees' Br. at 4. The district court did not address this question because FAPA was enacted after the parties' summary judgment briefing was submitted. We decline to address the effect of FAPA because, even assuming that statute does not apply retroactively, dismissal under the prior version of RPAPL § 1301 was appropriate.

Windward argues that special circumstances are present here because the foreclosure and sale of the Property in the State Action brought by the senior noteholder rendered the judgment of foreclosure in the Federal Action brought by Windward's predecessor junior noteholder effectively "void."[11]  Appellant's Br. at 10.  The caselaw Windward cites in support of this proposition is readily distinguishable, however: here, Windward's predecessor elected to bring the Federal Action and vigorously pursued that action until it obtained a foreclosure judgment, which still has legal effect.  *Cf. Valley Sav. Bank v. Rose*, 646 N.Y.S.2d 349, 351 (2d Dep't 1996) (prior foreclosure judgment legally voided by the bankruptcy discharge and the mortgagee "notabl[y] . . . did not *elect*" to bring initial action on mortgage debt but was "obliged to" do so under state law); *Old Republic Nat. Title Ins. Co. v. Conlin*, 13 N.Y.S.3d 99, 101 (2d Dep't 2015) (mortgagee's predecessor "effectively abandoned" foreclosure action).

Moreover, Windward failed to provide the district court with any evidence regarding either the terms of the Nationstar Agreement (pursuant to which Nationstar was dismissed from the Federal Action) or whether surplus funds remained after the Property's auction in the State Action.  The district court correctly noted that, without such evidence, it could not ensure that "there [was] 'no

---

[11] Windward pushes this argument further, asserting not only that special circumstances exist that should allow it to circumvent RPAPL § 1301(3)'s requirements but that RPAPL § 1301(3) is "not applicable" to this case because "there is no possibility of duplicative litigation."  Appellant's Br. at 10.  We find this argument unconvincing: it has no support in the statutory text or New York caselaw and ignores the fact that the Brownes have now had to expend time and money to defend a second suit on the same mortgage debt.

possibility of a double recovery.'"  Sp. App'x 27 (quoting *Lehman v. Roseanne Invs. Corp.*, 483 N.Y.S.2d 106, 108 (2d Dep't 1984)).[12] Windward claims that, at the summary judgment stage, the district court should have drawn in its favor any "ambiguity" over whether "potential surplus funds[] or settlement funds exist."  Appellant's Br. at 18.  But because Windward was asking the district court to exercise its equitable discretion to excuse Windward's failure to seek leave prior to filing, the burden was on Windward to prove the unavailability of alternate means of collecting the mortgage debt.[13] *See Dyck-O'Neal, Inc. v. Thomson*, 868 N.Y.S.2d 838, 840 (4th Dep't 2008) (no "special circumstances" excusing RPAPL § 1301(3) violation where plaintiff failed to establish circumstances of property's sale). Windward failed to meet this burden and we therefore hold that the district court did not abuse its discretion in concluding that there were no special circumstances which "manifestly required" it to hear the underlying action.  *See Rainbow Venture*, 633 N.Y.S.2d at 479 (internal quotation marks omitted).

---

[12] Indeed, as the district court pointed out, "it seems likely (given the sale price of $1,293,832.88, *see* Referee's Deed) that surplus funds were recovered . . . ." Sp. App'x 27.

[13] Before a district court can draw all ambiguities and inferences in favor of the non-moving party, as it must do at the summary judgment stage, that party is still required to "offer some hard evidence showing that its version of the events is not wholly fanciful."  *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Windward failed to allege facts before the district court regarding the existence of surplus monies or the terms of the Nationstar Agreement, let alone offer any supporting evidence.

## Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.